# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

—————————

No. 07-1888

—————————

United States of America,

        Appellee,

v.

Mykel Lee Crawford,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Southern District of Iowa.

—————————

Submitted: January 16, 2008
Filed: April 17, 2008

—————————

Before BYE, BEAM and GRUENDER, Circuit Judges.

—————————

GRUENDER, Circuit Judge.

A jury convicted Mykel Lee Crawford of possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D) and possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). The district court[1] sentenced him to six months' imprisonment on the marijuana conviction and a consecutive sixty months' imprisonment on the firearm conviction. Crawford

---

[1]The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

appeals only the firearm conviction, arguing that the Government engaged in prosecutorial misconduct that resulted in an unfair trial. We affirm.

On February 11, 2006, members of the Des Moines Police Department and the Bureau of Alcohol, Tobacco, Firearms and Explosives followed a white car that made an illegal turn. Police officers signaled the car to pull over and stop. Crawford pulled over, exited the vehicle and ran away. He was arrested, and a search revealed marijuana in his pockets and in the car. Officer Patrick Hickey read Crawford his *Miranda*[2] rights and asked him about the marijuana. Crawford stated that Locdog provided the drugs and explained that Locdog was a "Loc Crip." Police obtained a search warrant for Crawford's home and found more marijuana, scales, packaging materials, and a loaded SKS rifle.

Crawford was indicted for possession with intent to distribute marijuana and possession of a firearm during a drug trafficking crime. At trial, Crawford conceded guilt on the marijuana charge, and the only element of the firearm charge he contested was whether he knowingly possessed the SKS rifle in furtherance of his drug crime. Crawford filed a motion in limine to prevent the Government from referring to Crawford's relationship to gangs and gang activity. The Government generally agreed but explained during the motion in limine hearing that it wanted to introduce testimony from Officer Hickey that Crawford stated the marijuana belonged to an individual named Locdog, "who was a local Crip gang member." Crawford's counsel sought clarification:

> [COUNSEL]: As I understand the government's position, Your Honor, they just want to relate to the jury allegedly what my client has said to the officer.

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

THE COURT: But what your client allegedly said to the officer has nothing to do with gang.

[COUNSEL]: Correct. So if that's the understanding, then we have no problem with the government's position on that.

In its opening statement, the Government told the jury that Crawford "stated the marijuana belongs to an individual by the name of Locdog, who was a member of the Loc Crips street gang." Crawford did not object to this statement.

The Government presented the testimony of Officer Hickey, who testified about the conversation he had with Crawford.

A. [Crawford] said his friend's name was Locdog, his nickname was Locdog, and that Locdog was an L O C Crip in the area.

Q. What is an L O C Crip?

A. Well, a Crip is a type of a gang member.

Crawford objected, and the district court sustained the objection. Crawford did not request that the jury be instructed to disregard the answer, and the district court did not give such an instruction. The Government then asked:

Q. Did he make further statements concerning this Locdog who was a LOC Crip and the 5 pounds of marijuana?

Crawford objected again, and the district court sustained the objection before Officer Hickey could answer.

The Government requested a sidebar conference, which was not made a part of the record. After the conference, the Government continued to question Officer Hickey.

Q. Did you ask him where the marijuana had come from?

A. Yes.

Q. What was his answer?

A. It came from his friend that he knew as Locdog, who was an LOC Crip.

Crawford did not object.

Crawford called his cousin, John Galbreath, as a witness. Galbreath testified that he and Crawford "live in a rough neighborhood." During closing argument, the Government stated, "Then he threw out that, 'Well, we live in a bad neighborhood on the near north side of Des Moines.' Well, I don't know if I call it bad, but it's certainly not the best neighborhood in Des Moines, Iowa." Crawford did not object to this statement.

Crawford also called Paul Jacobsen, a firearms dealer, to testify about the uses of an SKS rifle. Jacobsen testified that local farmers who ran turkey and hog confinement operations use SKS rifles. On cross-examination, Jacobsen acknowledged that he knew of no "large scale farrowing or hog operations or turkey farms on the near north side of the City of Des Moines." Officer Hickey had previously testified that Crawford lived in a residential neighborhood. In closing argument, the Government stated, "[F]or those of you who are from Des Moines, Iowa, you know that there's absolutely no turkey farms in the city limits of Des Moines, Iowa and certainly not up around 2104 Washington. There's no farrowing operations, there's no hog confinement. There's nothing along those lines." Crawford also did not object to this statement.

The jury convicted Crawford on both counts, and he appeals his firearm conviction. Crawford argues that the Government engaged in misconduct by introducing evidence about gang affiliation, stating that Crawford lived in a "bad" neighborhood and referring to the jurors' knowledge of the lack of turkey and hog farming operations in Des Moines. To obtain a reversal for prosecutorial misconduct, Crawford must first show that the comments were improper and then that they

prejudiced Crawford's rights in obtaining a fair trial. *United States v. Milk*, 447 F.3d 593, 602 (8th Cir. 2006) (quoting *United States v. King*, 36 F.3d 728, 733 (8th Cir. 1994)). A prosecutor's comments are improper if they "are likely to inflame bias in the jury and to result in a verdict based on something other than the evidence." *United States v. Mullins*, 446 F.3d 750, 759 (8th Cir. 2006). If the comments are improper, we examine for prejudice by considering "(1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) any curative actions taken by the trial court." *United States v. Yu*, 484 F.3d 979, 986 (8th Cir. 2007) (internal quotation omitted). "Nevertheless, a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone . . . ." *United States v. Young*, 470 U.S. 1, 11 (1985).[3]

Crawford first argues that the Government's attempt to elicit evidence about gang affiliation violated the district court's ruling on his motion in limine. It appears that the district court's ruling on the motion in limine intended to allow into evidence Crawford's statement that Locdog was a Loc Crip member but not any reference to the Loc Crips being a "gang." During opening statement, however, Crawford did not object to the Government's reference to the Loc Crips as a street gang. Only after Officer Hickey testified that a Loc Crip is a type of gang member did Crawford object. After the sidebar conference thereafter, the Government neither elicited evidence about nor made further reference to gangs. To the extent that the Government's reference to "gangs" in opening statement and during Officer Hickey's testimony may have violated the motion in limine, we do not believe that it rises to the level of prosecutorial misconduct. Indeed, a "Crip" is widely recognized as a member of a particular gang. *See, e.g.*, *United States v. Banks*, 494 F.3d 681, 685 (8th Cir. 2007) ("The letter twice uses the word 'crip,' the name of a widely recognized gang.").

---

[3]To be eligible for reversal for the statements to which Crawford did not object, he must show plain error. The error must be plain, affect substantial rights and seriously affect the fairness, integrity or public reputation of judicial proceedings. *United States v. Pirani*, 406 F.3d 543, 550 (8th. Cir. 2005) (en banc).

Although Crawford apparently sought to exclude any reference to "gang," it is a reasonable inference that a "Crip" is a member of a gang. Because Crawford did not contest the introduction of the word "Crip," the Government's brief references to the word "gang" were neither improper nor prejudicial.

Next, Crawford contends that the Government's reference to a "bad" neighborhood in closing argument was improper. The Government was simply commenting on evidence adduced by Crawford's witness Galbreath who testified about a "rough" neighborhood. Although he did not object at trial, Crawford now relies on our opinion in *United States v. Cannon*, 88 F.3d 1495 (8th Cir. 1996), *abrogated on other grounds*, *Watson v. United States*, 552 U.S. ---, 128 S.Ct. 579 (2007), in which we held that the Government's labeling of defendants as "bad people" was improper argument. *Id.* at 1503. In *Cannon*, defense counsel objected to the characterization that the Government was making about the defendants' guilt by calling them "bad people." In this case, the statement was related to a "rough" or "bad" neighborhood, not a particular defendant, and Crawford's own witness introduced the evidence about the "rough" neighborhood in the first place. In fact, the Government even said of the neighborhood, "Well, I don't know if I call it bad." Thus, we do not find that the Government's characterization of Galbreath's testimony about the nature of the neighborhood to be improper, much less plainly so.

Finally, Crawford argues that the Government's statement about the lack of turkey or hog farming on the near north side of Des Moines amounted to the prosecutor testifying during closing argument. "The very nature of closing argument requires a detailed analysis of the testimony of each witness and the inferences to be drawn from the evidence." *United States v. Littrell*, 439 F.3d 875, 883 (8th Cir. 2006). Jacobsen testified that an SKS rifle could be used for turkey or hog farming, but the Government elicited testimony from Jacobsen that he knew of no such farming operations on the near north side of Des Moines. Officer Hickey testified that Crawford lived in a residential neighborhood. Although the Government's reference

to the jury's putative knowledge, rather than the specific evidence adduced at trial, was inartful, its inference during closing argument that Crawford's possession of the SKS rifle was not for turkey or hog farming purposes was supported by the record and thus not improper or prejudicial.

Because we do not find that the Government engaged in prosecutorial misconduct, we affirm Crawford's conviction.

_____