BRIGHT, Circuit Judge,
dissenting.
I respectfully dissent from' the majority’s conclusion that the district court did not abuse its discretion in denying Patrelle Jose Green-Bowman’s (Green-Bowman) motion for a new trial on the basis of prosecutorial misconduct. .In my reading of the record, the prosecutor used Green-Bowman’s 2011 firearm conviction to improperly infer Green-Bowman had a propensity to commit the instant offense. The prosecutor’s use was not only improper, but highly prejudicial. Thus, I would grant a new trial to Green-Bowman.
We review the denial of a motion for a new trial on the basis of prosecutorial misconduct for abuse of discretion. United States v. Barrera, 628 F.3d 1004, 1007 (8th Cir.2011). “ ‘[P]rosecutorial misconduct during closing argument may be grounds for reversal,’ but the district court has ‘broad discretion in controlling closing arguments.’ ” United States v. Ziesman, 409 F.3d 941, 954 (8th Cir.2005) (quoting United States v. Beckman, 222 F.3d 512, 526 (8th Cir.2000)). To obtain a reversal for prosecutorial misconduct, Green-Bowman must show that (1) the prosecutor’s remarks were improper, and (2) the prosecutor’s remarks prejudiced Green-Bowman’s rights in obtaining a fair trial. United States v. Robinson, 439 F.3d 777, 780 (8th Cir.2006). If the prosecutor’s comments were improper, we examine prejudice by considering “(1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant’s guilt, and (3) any curative actions taken by the trial court.” United States v. Crawford, 523 F.3d 858, 861 (8th Cir.2008) (quoting United States v. Yu, 484 F.3d 979, 986 (8th Cir.2007)).
Here, the district court ruled the 2011 firearm conviction admissible under Rule 404(b). The district court reasoned the 2011 firearm conviction was relevant to show “knowledge” of the presence of the firearm. Although the district court properly admitted the 2011 firearm conviction for that purpose, the prosecutor’s subsequent misuse of the 2011 firearm conviction during closing argument warrants reversal.
The “[ajdmission of Rule 404(b) evidence ... does not grant the government free rein to use that evidence however it *969 wishes.” United States v. Richards, 719 F.3d 746, 763-64 (7th Cir.2013). Improperly using Rule 404(b) evidence includes “ ‘arguing to a jury [at closing arguments] that it should convict a defendant based on the defendant’s propensity to commit a crime.’ ” Id. at 764 (quoting United States v. Simpson, 479 F.3d 492, 503 (7th Cir. 2007)); see also United States v. Brown, 327 F.3d 867, 870-72 (9th Cir.2003) (reversing for improper use of Rule 404(b) evidence during closing argument). An improper propensity argument need not be blatant and includes “placing [a] propensity inference at the center of [a prosecutor’s] closing argument.” Richards, 719 F.3d at 765 (emphasis added); see also United States v. Himelwright, 42 F.3d 777, 786 (3d Cir.1994) (noting prejudice can occur when a prosecutor places a “disproportionate emphasis” on Rule 404(b) evidence during closing argument).
In this case, the prosecutor improperly used Green-Bowman’s 2011 firearm conviction during closing argument to infer that Green-Bowman had a.-propensity to commit the instant offense. The prosecutor did so in several ways. First, the prosecutor spent approximately 21% of closing argument[9] discussing the 2011 firearm cdnviction. See Himelwright, 42 F.3d at 786 (discussing the potential prejudice caused by “disproportionate emphasis”). Second, the prosecutor spent a significant amount of time paralleling the offenses, asking the jury to draw the improper inference that Green-Bowman committed the instant offense because he had committed similar illegal conduct in the past.[10]
Lastly, the prosecutor failed to limit his use of the 2011 firearm conviction for the purpose proffered when the evidence was admitted. See Richards, 719 F.3d at 764.[11] *970 As discussed above, the district court admitted Green-Bowman’s prior firearm conviction under Rule 404(b) to show “knowledge of the presence of the firearm.” See United States v. Walker, 470 F.3d 1271, 1274 (8th Cir.2006) (emphasis added). But at closing- arguments, the prosecutor did not use the conviction solely for this proffered purpose, stating in particular:
Recall that the defendant had this conviction prior to August 2nd of 2013. It shows what he knows, what happens; When I have a gun, when I run, and when I eventually ' admit that I had the gun, I get convicted of carrying a weapon. So what did he do here? He=walks away: He lies about even being in the car, an obvious lie. He walks away nonchalantly. The defendant knew—based on, the context of, what he had done previously and what happened the time previously, it shows what he knew on that day and why he acted the way he did. This isn’t an accident..
(Gov’t Closing Arg. 16 (emphasis added)). The government went well beyond using the conviction to show “knowledge of the presence of the firearm” and, instead, used the prior conviction as evidence Green-Bowman’s actions proved he committed the -instant offense because Green-Bowman acted similarly .in the past. (See also id. at 14 (prosecutor admitting to the district court that he was using defendant’s prior conviction because Green-Bowman’s “behavior on the prior occasion demonstrate[d] the knowledge that [Green-Bowman] had on this occasion, why he acted the way he did, why he answered the questions the way he did, why he walked away”)).
Because-the prosecutor improperly used Green-Bowman’s prior conviction to show propensity, Green-Bowman must show prejudice. Robinson, 439 F.3d at 780. Of particular note, while sufficient to sustain the conviction, the governments properly admitted evidence was weak.[12] See United States v. Splain, 545 F.2d 1131, 1135 (8th Cir.1976) (“[I]f the evidence of guilt is weak or tenuous, the existence of prejudice is more easily assumed.”); see also United States v. Holmes, 413 F.3d 770, 776-77 (8th Cir.2005) (holding, in part, that a defendant should be granted a new trial because “the government’s case was less than overwhelming”). Further, while the district court did provide a limiting instruction as part of the jury instructions,[13] the district court did not sustain Green-Bowman’s repeated objections to the government’s use of the 2011 firearm conviction, or provide a curative instruction during the government’s closing argument. See United States v. Conrad, 320 F.3d 851, 856-57 (8th Cir.2003) (“We do not believe the standard ... instructiofis have a significant curative. .effect oh the statements *971 made by the prosecutor.”); Brown, 327 F.3d at 871-72 (holding the district court’s curative instructions both during and after closing argument were ineffective because the instruction during closing argument “did not tell the jury to reject the prosecutor’s implication that [the defendant] harbored a propensity to cheat his business associates”). Therefore, in my view, there exists sufficient evidence of prejudice to warrant reversal.
*970 Remember, even if you find that the defendant may have committed a similar act in the past, this is not evidence that he committed such an act in this case. ■ You may not convict a person simply because you believe he may have committed similar acts in the past. The defendant is on trial only for the crimes charged, and you may consider the evidence of prior acts only on the issues of intent, knowledge, and absence of mistake or accident.
*971 For the reasons stated above, I would vacate Green-Bowman’s conviction and'remand this matter for a new trial.

. Measured by number of lines in the Government's Closing Argument Transcript, DCD 130 (hereináfter, “Gov’t Closing Arg.”), excluding objections and statements made outside the presence of the jury.

. Below are a few examples of the prosecutor's "paralleling”:
• Running from police:
• Instant offense: “He's sitting in the car, and the officers walk up.... .And what’s [Green-Bowman] do? He walks away.” (Gov’t Closing Arg. 10).
• Prior conviction: ”[T]he defendant had a gun in a backpack ... and he knew it. He saw the police. And what did he do? He ran.” (Id. at 11-12).
• Actions when possessing a gun:
• Instant offense: "He’s sitting in the car, and the officers walk up ... And what’s he do? He walks away. Not one word. He walks away. He's distancing himself from the items that are illegal in the car that he knows he’s not supposed to be in possession of.” (Id. at 10).
• Prior offense: "And then remember the testimony that was read about Officer Zu-bak, what he saw of the defendant acting when the defendant knew he was in possession of a firearm. What did he see when the defendant—or when he got into that bar, the Bosnian bar? He sees the defendant calmly trying to mingle with á group of 50- to 60-year-old Bosnian men. Remember also what the defendant had just done, as he was attempting this mingling activity.” (Id. at 13).
• Lying to police:
• Instant offense: "When the officer asked- him in the interview about why he was right next to the gun, he.lies and says he wasn't next to .the gun.. He's distancing himself from the gun, just through words.” (Id. at 11).
• Prior conviction: "He attempted to distance himself from the gun, and, then, when asked about it" in the interview, he told a lie.” (Id. at 15).

.The majority opines it was proper for the prosecutor to “take the time -to compare the details of the two incidents thoroughly to highlight the similarities supporting an analogy and inference about what was going through Green-Bowman’s head.” (Maj. Op. 965). In my view, the prosecutor went beyond simply highlighting the. similarities between the cases. Instead, the prosecutor used the prior conviction to show Green-Bowman "acted” in a certain way in the past and, thus, *970 based on his conduct in this case must have committed the instant offense. See Richards, 719 F.3d at 765 (noting the inference-drawn from placing Rule 404(b) evidence “at the center of [the prosecutor’s] closing argument” was that the defendant was a drug dealer in California “so- he must have dealt” in the instant offense).

. As alluded to by the majority, the government only presented one piece of evidence to show "some nexus” between Green-Bowman and the firearm other than Green-Bowman sitting in the back of the vehicle, facing out, with his feet on the ground—Green-Bowman’s jacket partially wrapped around the firearm. (Maj. Op. 966-67).

. The district court advised the jury: