**UNITED STATES of America,**
Plaintiff-Appellee,

v.

**James Herbert DUFFY,** Defendant-Appellant.

No. 71–2504
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1972.

---

*  ▮ (Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Donald I. Bierman, Miami, Fla., court appointed, for defendant-appellant.

Robert W. Rust, U. S. Atty., Kenneth G. Oertel, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

The defendant-appellant James H. Duffy was convicted by a jury of transporting a motor vehicle in interstate commerce from Florida to California knowing it to have been stolen in violation of 18 U.S.C. § 2312. He was sentenced to imprisonment for a term of two years and six months. On this appeal, Duffy complains of error in the admission of certain evidence and of prejudice resulting from members of the jury having been present during a sentencing in an unrelated case. We affirm.

At the trial, the Government established that Duffy was employed in the body shop of an automobile dealership in Homestead, Florida; that the stolen vehicle was taken by the dealership as a trade-in on the purchase of a new car; that the vehicle was sent to the body shop for repair; and that the vehicle and the defendant disappeared over the same weekend. The Government also presented testimony as to the discovery of the car in California including the testimony of 1) a witness who was found in possession of the vehicle and arrested and who testified he had received the vehicle from the defendant, 2) a San Fernando, California police officer who made the arrest and recovered the automobile, and 3) an F.B.I. agent who examined the vehicle, its contents, and the vehicle identification number. The defense stipulated to the authenticity of fingerprints, identified as Duffy's found on the rear-view mirror of the vehicle. The defense sought, through the testimony of three witnesses including the defendant, to establish that Duffy had hitchhiked to California and that, although he had worked on the stolen vehicle in the automobile dealership in Florida, he had not stolen it and had not transported it to California.

Both the local police officer and the F.B.I. agent testified that the trunk of the stolen car contained two suitcases. Found inside one of the suitcases, according to the witnesses, was a white shirt imprinted with a laundry mark reading "D–U–F". The defendant objected to the admission of testimony about the shirt and asked that the government be required to produce the shirt.[1] The trial judge overruled the objection and admitted the testimony. This ruling is assigned as error.

The appellant argues that the admission of the testimony violated the "Best Evidence Rule". According to his conception of the "Rule", the Government should have been required to produce the shirt itself rather than testimony about the shirt. This contention misses the import of the "Best Evidence Rule". The "Rule", as it exists today, may be stated as follows:

> [I]n proving the terms of a *writing*, where such terms are material, the original writing must be produced, unless it is shown to be unavailable for some reason other than the serious fault of the proponent. (Emphasis supplied.)

McCormack, Evidence 409 (1954).[2] See also United States v. Wood, 1840, 14 Pet. 430, 10 L.Ed. 527; 4 Wigmore, Evidence §§ 1173–1282 (3rd ed. 1940). Although the phrase "Best Evidence Rule" is frequently used in general terms, the "Rule" itself is applicable only to the proof of the contents of a writing. See 2 Wharton's Criminal Evidence 476 (1955) and cases cited therein; McCormack, Evidence 408–410 (1954); United States v. Waldin, 3 Cir. 1958, 253

---

1. It is undisputed that the shirt was available to be produced and that there was no reason for failure to produce the shirt.

2. Wharton states the "Rule" as follows: [I]f the primary evidence of a fact is a writing, that writing must be produced in evidence as the best evidence of that fact, and . . . secondary evidence may only be produced when the nonproduction of the primary writing is explained and excused.
   2 Wharton's Criminal Evidence 475–476 (1955).

F.2d 551; Dicks v. United States, 5 Cir. 1958, 253 F.2d 713; Burney v. United States, 5 Cir. 1964, 339 F.2d 91.[3] McCormack summarizes the policy-justifications for the rule preferring the original writing:

> (1) . . . precision in presenting to the court the exact words of the writing is of more than average importance, particularly as respects operative or dispositive instruments, such as deeds, wills and contracts, since a slight variation in words may mean a great difference in rights, (2) . . . there is a substantial hazard of inaccuracy in the human process of making a copy by handwriting or typewriting, and (3) as respects oral testimony purporting to give from memory the terms of a writing, there is a special risk of error, greater than in the case of attempts at describing other situations generally. In the light of these dangers of mistransmission, accompanying the use of written copies or of recollection, largely avoided through proving the terms by presenting the writing itself, the preference for the original writing is justified.

McCormack, Evidence 410 (1954).

The "Rule" is not, by its terms or because of the policies underlying it, applicable to the instant case. The shirt with a laundry mark would not, under ordinary understanding, be considered a writing and would not, therefore, be covered by the "Best Evidence Rule". When the disputed evidence, such as the shirt in this case, is an object bearing a mark or inscription, and is, therefore, a chattel *and* a writing, the trial judge has discretion to treat the evidence as a chattel or as a writing. See 4 Wigmore, Evidence § 1182 and cases cited therein; McCormack, Evidence 411–412 and cases cited therein. In reaching his decision, the trial judge should consider the policy-consideration behind the "Rule". In the instant case, the trial judge was cor-

rect in allowing testimony about the shirt without requiring the production of the shirt. Because the writing involved in this case was simple, the inscription "D–U–F", there was little danger that the witness would inaccurately remember the terms of the "writing". Also, the terms of the "writing" were by no means central or critical to the case against Duffy. The crime charged was not possession of a certain article, where the failure to produce the article might prejudice the defense. The shirt was collateral evidence of the crime. Furthermore, it was only one piece of evidence in a substantial case against Duffy.

The appellant relies on Watson v. United States, 5 Cir. 1955, 224 F.2d 910 for his contention that the testimony was inadmissible without production of the shirt. *Watson* involved a prosecution for possession of liquor without internal revenue stamps affixed to the containers in violation of what was then 26 U.S.C. § 2803(a). This Court held that admission of testimony that there were no revenue stamps on seized containers without requiring production of the containers was erroneous. This case, however, does not provide support for appellant's assertion. First, the only case cited in *Watson* in support of application of the "Best Evidence Rule" to an object was a 1917 Ninth Circuit case involving a writing and not an object. See Simpson v. United States, 9 Cir. 1917, 245 F. 278. Second, the containers in *Watson* were critical to the proof of the crime. Possession of the containers was an element of the crime. As mentioned above, the shirt in the instant case, was not critical and possession of the shirt was not an element of the crime. Finally, *Watson*, although it has never been specifically overruled, has been distinguished into oblivion by this and other courts. *See* Atkins v. United States, 5 Cir. 1957, 240 F.2d 849 at 852; Dicks v. United States, 5 Cir. 1958, 253

---

3. For a discussion of the other uses of the phrase, see 4 Wigmore, Evidence 302–303 (3rd ed. 1940).

F.2d 713; West v. United States, 5 Cir. 1958, 259 F.2d 868; Palmquist v. United States, 5 Cir. 1960, 283 F.2d 758; Chandler v. United States, 10 Cir. 1963, 318 F.2d 356; United States v. Alexander, 4 Cir. 1964, 326 F.2d 736; Burney v. United States, 5 Cir. 1964, 339 F.2d 91; O'Neal v. United States, 5 Cir. 1965, 341 F.2d 581. Where *Watson* has been followed, a writing has been involved. *See* Daniel v. United States, 5 Cir. 1956, 234 F.2d 102; United States v. Maxwell, 2 Cir. 1967, 383 F.2d 437. In *Burney*, we held that oral testimony describing the contents of two containers as distilled spirits was admissible without producing the containers or their contents.

> The Watson decision is a minority decision on this point. As far as we are able to ascertain, the Watson case is the only case in all of the Circuits which does not confine the scope of the best evidence rule to the production of original documents or writings whenever feasible.

339 F.2d at 93.

In sum, the admission of the testimony in the instant case did not violate the "Best Evidence Rule".

The appellant goes further, however, and argues that the admission of the testimony without the production of the shirt denied the appellant his right to cross-examination. We cannot accept this argument. Our reading of the record convinces us that the defense was given every opportunity to cross-examine the police officer and the F.B.I. agent, particularly about the shirt. The failure to produce the shirt is now shown to have prejudiced the defense.

During the course of Duffy's trial, several of the jurors in Duffy's case were in the courtroom and witnessed the sentencing of three defendants in a wholly unrelated case. Two of the defendants received jail sentences and one received probation. The appellant argues, citing United States v. Davidson, 6 Cir. 1966, 367 F.2d 60, Demetree v. United States, 5 Cir. 1953, 207 F.2d 892, and Lovely v. United States, 4 Cir. 1948, 169 F.2d 386, that this event undercut the role of the jury in that the jury, by seeing the possibility of a lenient sentence or probation, might adjust its verdict accordingly.

All of the cases relied upon by the appellant involve specific comment by the trial judge to the jury intimating possible consequences of their verdict. We cannot hold that the sentencing scene witnessed by the jurors in the instant case prejudiced the appellant. To do so would be to ignore the realities of television, movies, and newspapers. Every juror is likely to know something about the possible consequences of a guilty verdict.

By our decision, we do not mean to give our blessings to the practice followed in this case. A trial judge should, whenever possible, conduct sentencing or other proceedings in unrelated cases, out of the presence of empaneled jurors. We hold, however, that the defendants were not prejudiced in such a manner as to require reversal. See F.R.Crim.P. 52.

Affirmed.