# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1650

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Charles Lamont Lemon, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  October 18, 2000

Filed:  January 26, 2001

_____

Before McMILLIAN, BOWMAN, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

When Minneapolis police executed a no-knock warrant to search the apartment of Charles Lemon's girlfriend, they found Lemon asleep in the master bedroom, 203 grams of crack cocaine on a shelf in the bedroom closet, and a box of .45 caliber ammunition in a dresser drawer.  A jury convicted Lemon of possessing crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g).  He appeals, challenging the sufficiency of the evidence, the admission of evidence linking him to the "Family Mob" gang, and alleged prosecutorial misconduct.  We affirm.

## I. Sufficiency of the Evidence

Lemon stipulated that he had three prior felony convictions, that the ammunition had traveled in interstate commerce, and that the substance found on the closet shelf was crack cocaine. In addition, the government introduced overwhelming evidence that 203 grams is a distribution quantity of crack cocaine, having a street value of $20,000 to $40,000. Thus, the fighting issue at trial was whether Lemon was in constructive possession of the drugs and ammunition. While mere physical proximity to contraband is insufficient to convict a person of possession with intent to distribute, "*knowledge* of presence, plus *control* over the thing is constructive possession." United States v. Johnson, 18 F.3d 641, 647 (8th Cir. 1994) (emphasis in original). If there is knowledge, control is established by proof the person has "dominion over the premises in which the contraband is concealed." United States v. Brett, 872 F.2d 1365, 1369 (8th Cir.), cert. denied, 493 U.S. 932 (1989); see also United States v. Surratt, 172 F.3d 559, 564 (8th Cir.) (defendant constructively possessed drugs and gun found in his apartment), cert. denied, 528 U.S. 910 (1999).

In searching the apartment, the police found a leather jacket hanging on the bedroom closet door. Officer Elizabeth Holland testified she saw Lemon wearing that jacket while engaged in suspicious activities during the prior week. In one of the jacket pockets, police found keys to the apartment. This was highly probative evidence of constructive possession. See Brett, 872 F.2d at 1369 (possession of key to crack house was sufficient evidence of knowing possession). Lemon nonetheless argues there was insufficient evidence because his girlfriend, Qiana Hicks, leased the apartment, he lived elsewhere, and the government failed to prove he knew the drugs and ammunition were there and intended to exercise control over them.

We agree it takes more evidence of knowledge and control to prove that a defendant constructively possessed contraband found in someone else's apartment, as opposed to his own residence. For example, in United States v. Dunlap, 28 F.3d 823,

826-27 (8th Cir. 1994), defendant was arrested while present in a drug dealer's apartment in circumstances that suggested drug trafficking. We nonetheless reversed his conviction for possession with intent to distribute because his "behavior was equally consistent with an intent to purchase cocaine for his own use, an offense not charged in the indictment." Id. at 827. Thus, to resolve Lemon's sufficiency argument, we must examine the government's evidence that he knew of and exercised control over the contraband found in Hicks's apartment. In reviewing this issue, "we must give the government the benefit of all reasonable inferences which may logically be drawn from that evidence." United States v. Watson, 952 F.2d 982, 987 (8th Cir. 1991), cert. denied, 503 U.S. 994 (1992).

First, at the time of the search, Lemon was undressed and asleep. No one else was present, Hicks having left for work earlier that morning. Though Lemon resided elsewhere most of the time, Hicks admitted he stayed in her apartment with some frequency. Hicks testified she only gave Lemon her spare apartment keys the night before, when he went to the store, but the jury was free to infer that Lemon had more general control over the keys found in his jacket pocket. This was sufficient evidence he had dominion over the premises in which the contraband was found, leaving only the question whether he had knowledge of that contraband.

Second, Officer Holland testified that she had observed Lemon engaged in what appeared to be illegal drug sales outside his mother's home the week prior to the search. In addition, Deputy Sheriff David Lind testified that in 1996, while searching the home of Lemon's mother, he found crack cocaine in Lemon's shirt pocket, and more crack cocaine and a Tanita electronic scale in the basement where Lemon was living. Lemon later pleaded guilty to possession of crack cocaine in state court. In Hicks's apartment, a Tanita scale and a box of Glad baggies were found in the dresser drawer where the ammunition was found. The proof of Lemon's prior drug trafficking was clearly relevant to the question whether he had knowledge of the drugs found in Hicks's apartment. See United States v. Thomas, 58 F.3d 1318, 1323 (8th Cir. 1995).

Third, Sheriff Lind further testified that in 1996 Lemon admitted he owned a .45 caliber handgun uncovered during the search of his mother's home. The government presented testimony that a .45 caliber handgun is relatively uncommon, and Lemon's parole officer, called as a defense witness, admitted on cross exam he appeared to have "a love for firearms." All this was strong circumstantial evidence Lemon constructively possessed the box of .45 caliber ammunition found in the dresser drawer.

Fourth, police found on top of the dresser a two-finger ring with the letters "FMOB." The government presented expert testimony that "FMOB" was a symbol for the Family Mob, a street gang meeting the definition of a criminal gang under Minnesota law,[1] and that Lemon had admitted under oath in a prior court proceeding to being a member of that gang.

Like the district court,[2] we conclude that this evidence, viewed in its entirety, is more than sufficient to convict Lemon of constructively possessing the crack cocaine and ammunition found in Hicks's apartment. There was contrary evidence, particularly Hicks's testimony that the FMOB ring and two pairs of men's trousers found in the apartment belonged to her brother, who stayed there from time to time. But the government vigorously attacked Hicks's credibility, and it was the jury's function to evaluate her credibility and to weigh her testimony against the government's evidence of constructive possession.

## II. Gang Membership Evidence

---

[1]A "criminal gang" has one or more enumerated crimes as one of its primary activities, has a common name or symbol, and includes members who have engaged in a pattern of criminal activity. See MINN. STAT. § 609.229, subd. 1.

[2]The HONORABLE PAUL A. MAGNUSON, Chief Judge of the United States District Court for the District of Minnesota.

Lemon concedes that his membership in the Family Mob gang was relevant to whether his FMOB ring was found on Ms. Hicks's dresser. He argues, however, that the district court erred in admitting this evidence without a limiting instruction because the risk of unfair prejudice -- the jury convicting him because of his association with a criminal gang -- outweighed its limited probative value as cumulative evidence linking him to the apartment and its contents. Evidence of gang membership is admissible if relevant to a disputed issue. See, e.g., United States v. Sills, 120 F.3d 917, 920 (8th Cir. 1997); United States v. Johnson, 28 F.3d 1487, 1497 (8th Cir. 1994), cert. denied, 513 U.S. 1098 (1995). However, such evidence can be unfairly prejudicial, and in United States v. Roark, 924 F.2d 1426, 1434 (8th Cir. 1991), we ordered a new trial because the government's use of prejudicial gang evidence was so pervasive "the entire theme of the trial [became] guilt[] by association." The district court has broad discretion when weighing probative value against this type of unfair prejudice. United States v. Sparks, 949 F.2d 1023, 1026 (8th Cir. 1991) (admission of gang affiliation evidence not an abuse of discretion), cert. denied, 504 U.S. 927 (1992).

Prior to trial, the government filed a motion in limine seeking to admit both expert testimony as to Lemon's admitted gang membership, and evidence that his most recent felony conviction was a violation of MINN. STAT. § 609.229, entitled Crime Committed for the Benefit of a Gang. Lemon's violation resulted from his participation in a gang-related drive-by shooting. The district court ruled:

> it appears that while limited evidence of [Lemon's] gang affiliation is relevant to material issues in this case and not unfairly prejudicial, [the unfair prejudice from] evidence of [Lemon's] prior conviction for Crime for the Benefit of a Gang substantially outweighs its probative value. For these reasons, the Court exercises its discretion under Rules 401 and 403 of the Federal Rules of Evidence and grants the admission of expert testimony linking [Lemon] to the "F Mob" ring, but denies admission of [Lemon's] Crime for the Benefit of a Gang conviction.

-5-

By this ruling, the court admitted a limited amount of gang-related evidence that was relevant to Lemon's "mere presence" defense, while excluding evidence of the drive-by shooting conviction, which might have prejudicially diverted the jury's attention from the constructive possession issues central to the case. As a result, gang evidence did not become a pervasive theme of the trial, as in <u>Roark</u>. In addition, the government's expert carefully used the word "gang" as it is defined in § 609.229, the Minnesota statute Lemon violated, ensuring that the jury would not *unfairly* equate his Family Mob association with more highly publicized criminal gangs. In these circumstances, the district court did not abuse its discretion in admitting this gang-related evidence. Lemon further argues this was Rule 404(b) evidence that required a limiting instruction. But no such instruction was requested, and the court's failure to give one *sua sponte* was not plain error. Moreover, evidence that Lemon was a member of the Family Mob at the time of the search was circumstantial evidence of constructive possession requiring no Rule 404(b) limiting instruction. <u>See</u> <u>United States v. Aranda</u>, 963 F.2d 211, 216 (8th Cir. 1992).

### III. Alleged Prosecutor Misconduct

Lemon argues he was denied a fair trial by the prosecutor's repeated and improper injection of irrelevant and inflammatory issues into the trial. To prove prosecutor misconduct, Lemon must show that the statements were improper and that the error affected his substantial rights so as to deprive him of a fair trial. <u>United States v. Wiley</u>, 29 F.3d 345, 351 (8th Cir.), <u>cert. denied</u>, 513 U.S. 1005 (1994).

Lemon timely objected to only one of the prosecutor's comments challenged on appeal. After the district court excluded evidence of Lemon's drive-by shooting conviction, the prosecutor asked a defense witness: "And in fact, [Lemon] did not go to prison on those [drug] charges, did he? He went to prison on another separate charge called Crime Committed for the Benefit of a Gang." Lemon objected. The court sustained the objection and ordered the witness not to answer. On appeal, Lemon

argues this was an improper attempt to inject irrelevant evidence of his criminal history. We disagree. Although the district court sustained the objection, not every objectionable question is "improper" in the prosecutorial misconduct sense of that word. Here, the prior gang conviction was relevant, but its relevance was outweighed by possible unfair prejudice. The unfair prejudice derived primarily from the drive-by shooting underlying the conviction. The prosecutor's question did not disclose that underlying conduct, and the jury already knew Lemon was an admitted gang member and convicted felon. The relative lack of prejudice is reflected by the fact that Lemon did not move for a mistrial or request additional curative action when his objection was sustained. For all these reasons, this contention is without merit.

The prosecutorial comments challenged for the first time on appeal fall far short, singly or in combination, of plain error, that is, error that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736 (1993); see FED R. CRIM. P. 52(b); United States v. Tulk, 171 F.3d 596, 599 (8th Cir. 1999).

-- Asking Officer Holland to describe the elaborate measures employed by her "SWAT team" in executing the no-knock warrant was relevant, not only as background, but to establish that no other occupant successfully fled the apartment.

-- Lemon argues the prosecution improperly referred to investigative evidence not before the jury (an informant's tip) when Holland testified she had information Lemon and drugs would be found in the apartment. The district court has discretion to admit this type of background testimony. See Watson, 952 F.3d at 987. Moreover, the testimony was supported, at least in part, by Holland's testimony that she saw Lemon conducting what appeared to be narcotics sales the previous week.

-- The cross examination of Lemon's parole officer about his criminal history was responsive to her direct testimony that Lemon told her he was being harassed by

-7-

the police.  Asking the parole officer whether her case notes referred to Lemon's "love for firearms" was relevant to whether Lemon constructively possessed the ammunition found in Hicks's apartment.  Even if this was improper opinion testimony, it was not plain error.

-- One statement by the prosecutor during closing argument came fairly close to an improper conduct line we have drawn in prior cases:

> The defendant is a businessman . . . His commerce is drug dealing, and the people that he deals to are addicts.  They're people that are horribly addicted to this terrible thing we call crack cocaine.

In United States v. Johnson, 968 F.2d 768, 771 (8th Cir. 1992), a drug case, we ordered a new trial because the prosecutor in closing had improperly appealed to the jury to be the conscience of the community when he urged the jury to be "a bulwark against [the defendant's] putting this poison on the streets."  Here, the reference to "horribly addicted" crack customers may arouse strong feelings, but there was no suggestion the jury had a duty to serve as the conscience of the community.  In Wiley, 29 F.3d at 351-52, though we affirmed the drug conviction, we commented that it is an improper appeal to the jury's passion and prejudice to compare a drug dealer's "business" to the business of law-abiding citizens.  Here, there was no such comparison, and the reference to Lemon's drug dealing as a business was relevant to an issue in the case -- whether he possessed crack cocaine with the intent to distribute it.  Thus, even if this closing argument was objectionable, it was not plain error.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.