# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2569

_____

United States of America,

        Appellee,

v.

Ronald Andrew Buchanan,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

Submitted: January 14, 2010
Filed: May 4, 2010

_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Ronald Andrew Buchanan was charged in a four-count indictment with possession with the intent to distribute at least 50 grams or more of a mixture and substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) ("Count 1"); possession with intent to distribute a mixture and substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Count 2"); being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count 3"); and notice of forfeiture of all the firearms and ammunition involved in the commission of the foregoing offenses pursuant to 18 U.S.C. § 924(d), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c) ("Count 4"). The jury convicted Buchanan

on Counts 1 and 2, but acquitted him on Count 3. The district court[1] sentenced Buchanan to 300 months' imprisonment. On appeal, Buchanan argues that the district court erred in (1) admitting testimony regarding the numeric inscription on a safe where the narcotics were found, in violation of the rule against hearsay and the best evidence rule; (2) denying his objections to the unnoticed expert testimony of latent fingerprint expert John Kilgore, in violation of Federal Rule of Criminal Procedure 16(a)(1)(g); and (3) denying his motion for judgment of acquittal, as there was insufficient evidence to support his conviction. We affirm.

## I. *Background*

As part of a narcotics investigation, law enforcement observed Buchanan at two residences—930 65th Street, Windsor Heights, Iowa ("the 65th Street residence") and 1933 East 33rd Street, Des Moines, Iowa ("the 33rd Street residence") in the fall of 2007. Law enforcement believed that the 65th Street residence was a "stash house"—a place in which drug dealers store money, drugs, and firearms. Law enforcement officials saw Buchanan in three separate vehicles at both addresses—a Chevy Tahoe, a Ford Explorer, and a Chevy Blazer.

Law enforcement executed search warrants for the two residences, the Chevy Blazer, and Buchanan's person on November 2, 2007, at 10 a.m. At that time, officers observed Buchanan leaving the 33rd Street residence in the Chevy Blazer, proceeding to the 65th Street residence, entering that residence, and departing a short time later. Officers stopped the Chevy Blazer. A drug dog at the scene did not alert on the vehicle. Officers read Buchanan his *Miranda* rights and informed him of the search warrants. Buchanan told the officers that he did not live at the 65th Street residence and that it was his girlfriend's home. According to Buchanan, he had been living at the 33rd Street residence for the previous four to five months.

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

Officers executed the search warrant on the Chevy Blazer and Buchanan's person. Officers discovered drug notes and a set of keys—including one key bearing the number "2010" upon it—on Buchanan's person. They also found a knotted baggie top on the Chevy Blazer's floorboard, which they considered to be drug-packaging related.

Further investigation determined that the "2010" key matched a large safe under the stairs in the basement of the 65th Street residence. This safe also bore the number "2010" on it and contained within it a manual bearing the same number. The large safe also contained a lease agreement for the 65th Street residence, signed in September 2007, listing Buchanan and Traci Smith, Buchanan's girlfriend, as tenants, a photo of Buchanan, and an Iowa vehicle title for the Chevy Blazer in Buchanan's name. Officers did not seize the safe. Buchanan also had the key to another safe in his wallet, which matched a small personal document safe also under the stairs at the 65th Street residence.

Traci Smith was at the 65th Street residence when law enforcement executed the search warrant. Smith had a previous conviction for possession of crack with intent to distribute. Officers discovered the keys to the small document safe in Smith's bedroom. Smith's documents were in that safe. The keys found in Smith's bedroom did not fit the large safe.

A mattress was located on the floor at the foot of the stairs to the basement. The area under the stairs had been finished off to include a storage room. A drug dog "indicated" to the rear of this storage area under the stairs near the large safe. The large safe contained 199.52 grams of cocaine, 176.05 grams of cocaine base, $18,000 in currency, and two digital scales. The quantities of drugs seized were consistent with distribution. The safe also contained other items consistent with distribution—the currency, the digital scales, baggies, red and black rubber bands for bundling

currency, and razor blades for shaving larger rocks of crack to smaller rocks for distribution. In the kitchen, officers found a digital scale with three boxes of baggies.

One of the digital scales from the large safe was submitted for fingerprint analysis. Latent fingerprints were lifted from the scale that matched Buchanan. Those latent prints were found on the surface of the scale where items would be weighed.

Officers also found surveillance camera equipment on a shelf; a box of Remington nine-millimeter ammunition under the stairs; a loaded Cobray–11 nine-millimeter semi-automatic pistol in the basement under a mattress; a pair of size 44 men's blue jeans on the kitchen table; and jean shorts also in size 44 in a bag in the basement. According to a deputy jailer, Buchanan's personal effects at the jail included size 42 blue jeans.

Based upon the items seized, law enforcement determined that the 65th Street residence was actually a stash house. Buchanan was subsequently charged in the four-count indictment.

Prior to trial, Buchanan moved to exclude the identifying features of the safe on the grounds that testimony describing the safe's interior inscription would be hearsay and not the "best evidence." The district court denied Buchanan's motion.

Buchanan moved for judgment of acquittal at the conclusion of the government's case and renewed it at the close of all the evidence. The district court denied Buchanan's motion.

The jury convicted Buchanan of Counts 1 and 2 and acquitted him on Count 3. Thereafter, Buchanan filed a motion for a new trial, arguing that (1) the district court erroneously permitted testimony regarding the identifying features of the safe and allowed law enforcement to testify that the key allegedly found in Buchanan's

possession matched the safe; (2) admission of the testimony regarding the identifying features of the safe violated Buchanan's substantial rights, specifically his right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution; and (3) insufficient evidence existed that Buchanan possessed the narcotics because no drugs were found on his person and no evidence established his unrestricted access to the 65th Street residence. The district court denied Buchanan's motion for a new trial.

## II. *Discussion*

On appeal, Buchanan argues that the district court erred in (1) admitting testimony regarding the numeric inscription on the safe where the narcotics were found, in violation of the rule against hearsay and the best evidence rule; (2) denying his objections to the unnoticed expert testimony of latent fingerprint expert John Kilgore, in violation of Federal Rule of Criminal Procedure 16(a)(1)(g); and (3) denying his motion for judgment of acquittal, as there was insufficient evidence to support his conviction.

### A. *Admission of Testimony Concerning Numeric Inscription on the Safe*

According to Buchanan, the district court erroneously permitted law enforcement officers to testify regarding the writings contained within the safe. Buchanan characterizes the government's case as asserting that these writings provided the number of the key that allegedly matched the safe. The government contended the key, purportedly discovered on Buchanan's person, had an inscription matching the key number inscribed in the interior of the safe. The government also alleged that the key matched the safe in which the drugs were discovered. Buchanan contends that the admission of such testimony is inadmissible hearsay and violates the best evidence rule.

> "We review a district court's evidentiary rulings for clear abuse of discretion, reversing only when an improper evidentiary ruling affected

[a party's] substantial rights or had more than a slight influence on the verdict." *United States v. Two Shields*, 497 F.3d 789, 792 (8th Cir. 2007) (citation omitted). We will not reverse if the error was harmless. *See* Fed. R. Civ. P. 61.

*United States v. Missouri*, 535 F.3d 844, 848 (8th Cir. 2008).

### 1. *Hearsay*

Buchanan maintains that the written assertion purportedly contained within the safe—that a key with the inscription "2010" belonged to the safe—meets the classic definition of hearsay because the inscription within the safe was meant to communicate information that the safe was number 2010 and that the key with the number 2010 belonged to that particular safe.

In response, the government argues that the officers' testimony concerning the 2010 inscription was not hearsay, as it was not offered for the truth of the matter asserted; instead, it was offered as an identifying characteristic that was also contained on the key that Buchanan possessed and the manual inside the safe.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Fed. R. Evid. 801(a). An "assertion" is "1. a declaration or allegation. 2. A person's speaking, writing, acting, or failing to act with the intent of expressing a fact or opinion; the act or an instance of engaging in communicative behavior." Black's Law Dictionary (8th ed. 2004).

Lacking circuit precedent directly on point, we turn to a closely analogous sister circuit case. The Tenth Circuit, applying plain-error review, rejected a defendant's argument that a "nine millimeter pistol . . . was improperly admitted as proof that [the

defendant] used a weapon that had travelled in interstate commerce . . . ." *United States v. Thody*, 978 F.2d 625, 630 (10th Cir. 1992). In *Thody*, "the government offer[ed] no other evidence to prove that the weapon had moved interstate" and relied "solely on the manufacturer's 'Made in Spain' marking on the gun itself." *Id.* The court held that "the manufacturer's imprint in the gun is not hearsay. It is technically not an assertion by a declarant as contemplated by the Rule." *Id.* at 631.

We consider the matching markings on the key and the safe inscription similarly not to be hearsay. The officers are describing their own observations, not recounting the testimony of an out-of-court declarant. We hold that the district court did not abuse its discretion in admitting the officers' testimony regarding the numeric inscription on the safe where the narcotics were found. The officers' testimony that the safe contained the inscription "2010" is not hearsay; instead, the inscription is similar to the marking of "Made in Spain" on the gun in *Thody*. As the Tenth Circuit explained, such a marking is "technically not an assertion by a declarant" under Rule 801. Furthermore, the inscription was not offered "to prove the truth of the matter asserted"—that the safe was, in fact, a 2010 model. Instead, it was admitted to show that the number on the safe matched the number on Buchanan's key.

## 2. *Best Evidence*

Buchanan next maintains that even if the writings inscribed on the safe's interior did not constitute hearsay, the government's witnesses could not testify as to the contents of the writing without the required foundation and authentication being laid and the writing being introduced into evidence. According to Buchanan, the assertion within the interior of the safe that it was a "2010" model and that the key with the inscription "2010" belonged to the safe is clearly a "writing" or "recording" under Federal Rule of Evidence 1002; therefore, the safe itself—which officers admittedly did not seize— should have been introduced into evidence.

In response, the government asserts that the best evidence rule is inapplicable because the safe was not a "writing" but instead a "chattel."

Federal Rule of Evidence 1002, known as the "best evidence rule," provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."

The 'Rule' as it exists today, may be stated as follows:

> [I]n proving the terms of a *writing*, where such terms are material, the original writing must be produced, unless it is shown to be unavailable for some reason other than the serious fault of the proponent.

*United States v. Duffy*, 454 F.2d 809, 811 (5th Cir. 1972) (quoting McCormack, Evidence 409 (1954)) (emphasis added in *Duffy*). The best evidence rule "is applicable only to the proof of the contents of a writing," even though it "is frequently used in general terms." *Id*. The policy-justifications for preferring the original writing include:

> (1) . . . precision in presenting to the court the exact words of the writing is of more than average importance, particularly as respects operative or dispositive instruments, such as deeds, wills and contracts, since a slight variation in words may mean a great difference in rights, (2) . . . there is a substantial hazard of inaccuracy in the human process of making a copy by handwriting or typewriting, and (3) as respects oral testimony purporting to give from memory the terms of a writing, there is a special risk of error, greater than in the case of attempts at describing other situations generally. In the light of these dangers of mistransmission, accompanying the use of written copies or of recollection, largely avoided through proving the terms by presenting the writing itself, the preference for the original writing is justified.

*Id*. at 812 (quoting McCormack, Evidence 410 (1954)).

-8-

In *Duffy*, law enforcement officials testified that the trunk of a stolen car contained two suitcases. *Id*. at 811. According to the witnesses, inside one of the suitcases was a white shirt imprinted with a laundry mark reading "D-U-F." *Id*. The defendant, charged with transporting a motor vehicle in interstate commerce knowing it to have been stolen, objected to the admission of the testimony about the shirt and requested that the government produce the shirt. *Id*. The district court overruled the objection and admitted the testimony. *Id*. On appeal, the defendant argued that such testimony violated the best evidence rule. *Id*. The Fifth Circuit rejected the defendant's argument, holding:

> The "Rule" is not, by its terms or because of the policies underlying it, applicable to the instant case. The shirt with a laundry mark would not, under ordinary understanding, be considered a writing and would not, therefore, be covered by the "Best Evidence Rule[."] *When the disputed evidence, such as the shirt in this case, is an object bearing a mark or inscription, and is, therefore, a chattel and a writing*, the trial judge has discretion to treat the evidence as a chattel or as a writing. *See* 4 Wigmore, Evidence § 1182 and cases cited therein; McCormack, Evidence 411–412 and cases cited therein. In reaching his decision, the trial judge should consider the policy-consideration behind the "Rule[."] In the instant case, the trial judge was correct in allowing testimony about the shirt without requiring the production of the shirt. Because the writing involved in this case was simple, the inscription "D-U-F[,"] there was little danger that the witness would inaccurately remember the terms of the "writing[."] Also, the terms of the "writing" were by no means central or critical to the case against Duffy. The crime charged was not possession of a certain article, where the failure to produce the article might prejudice the defense. *The shirt was collateral evidence of the crime. Furthermore, it was only one piece of evidence in a substantial case against Duffy.*

*Id*. at 812 (emphasis added).

Following *Duffy*, a defendant convicted on various counts related to trafficking in counterfeit watches appealed his conviction, arguing that the district court plainly erred in not requiring the government to produce the actual watches sold as the best

evidence that he had trafficked in counterfeit goods. *United States v. Yamin*, 868 F.2d 130, 132 (5th Cir. 1989). The court rejected the defendant's argument, explaining:

> This novel argument appears plausible because it is, at least in part, the writing on the watch that makes it a counterfeit. Thus it may be argued that it is the content of that writing that must be proved. The purpose of the best evidence rule, however, is to prevent inaccuracy and fraud when attempting to prove the contents of a writing. Neither of those purposes was violated here. The viewing of a simple and recognized trademark is not likely to be inaccurately remembered. While the mark is in writing, it is more like a picture or a symbol than a written document. In addition, an object bearing a mark is both a chattel and a writing, and the trial judge has discretion to treat it as a chattel, to which the best evidence rule does not apply.

*Id*. at 134 (internal footnotes omitted).

Here, the district court appropriately treated the safe as chattel. The policy considerations behind the best evidence rule, as in *Duffy* and *Yamin*, are not implicated. The writing—"2010"—was simple, meaning that little danger existed that the witness would inaccurately remember the terms of the "writing" on the safe. And, as the district court noted, the likelihood of fraud was small because the government also admitted into evidence the safe's instructional manual, which was found inside the safe and also bore the number "2010."

Moreover, as the district court explained, "the testimony regarding the inscription on the safe was only a small part of the substantial evidence presented against Buchanan." *See infra* Part II.C. The numeric inscription was not "critical" to the case against Buchanan; instead, the safe was merely collateral evidence of the crime.

B. *Expert Testimony*

Buchanan also argues that the district court erred in refusing to strike the expert testimony of John Kilgore, as it was improperly noticed pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G).

In response, the government contends that the district court did not err in admitting Kilgore's testimony. Specifically, the government notes that (1) Kilgore was listed on the government's January 4, 2009 witness list; (2) before testimony began, the government announced that two fingerprint examiners were going to testify; (3) Buchanan admitted at trial that he had Kilgore's lab report; (4) Kilgore's two-page report of his findings was in discovery; (5) the government typically uses lab reports of analysis and findings as satisfying Rule 16; and (6) the parties entered into a stipulated protective order governing discovery, which states that the discovery materials the government provided contained the Rule 16 material. Consequently, the government argues that it had no further obligation to point out that the material is provided under the expert provisions of Rule 16.

"We review for an abuse of discretion alleged violations of Federal Rule of Criminal Procedure 16(a)(1)(G)." *United States v. Conroy*, 424 F.3d 833, 838 (8th Cir. 2005).

The government's witness list, filed January 4, 2009, listed "John Kilgore" as a witness. During the trial on January 5, 2009, the court inquired of the government as to whether it was going to say that Buchanan's "fingerprints are on file." In response, the government stated, "Well, the fingerprint examiners are probably going to refer to these [fingerprint cards] and tell how they compared to the latents." During trial, Tim Briggs, a senior identification technician and latent fingerprint examiner for the Des Moines Police Department, testified that he matched seven of the eight latent fingerprints retrieved from the scale in the safe to Buchanan.[2]

---

[2]Buchanan argues that an issue of reliability exists as to Briggs because he referred to "Exhibit 13" rather than "Exhibit 13A." But this was clearly a

-11-

After Briggs, Kilgore, a criminalist with the Iowa Division of Criminal Investigation, testified concerning his analysis of the fingerprints. After Kilgore testified as to his qualifications, Buchanan's counsel objected to the testimony as "unnoticed expert testimony." A sidebar conference ensued, and the district court overruled the objection and permitted Kilgore's testimony. No record was made of the conference. After Kilgore testified concerning his review of the latent fingerprints and Buchanan's known fingerprints but before giving his conclusions, Buchanan's counsel renewed his objection under Rule 16 to the testimony as unnoticed expert testimony and requested to make a record outside the presence of the jury. The court overruled the objection but permitted Buchanan's counsel to make a record after Kilgore's testimony, stating that the matter had already been discussed. Kilgore then testified that "[s]even of the [eight] developed latent fingerprints observed on the photographs in Government Exhibit 52 were made by the individual whose known fingerprints appear on the original copies of the fingerprint cards that appear in Government Exhibits 48 and 47, known fingerprints bearing the name Ronald Buchanan."

Thereafter, outside the presence of the jury, Buchanan's counsel made a record on the alleged unnoticed expert testimony. According to counsel, on December 19, 2008, he provided the government with a specific request for a written summary of any witnesses that the government intended to use in their case-in-chief under Federal Rules of Evidence 702, 703, or 705, and he specifically cited Rule 16(a)(1)(G). Counsel argued that, under Rule 16(a)(1)(G), at the defendant's request the government must provide the defendant with a written summary of any testimony that it intends to use under Rules 702, 703, or 705. He also cited Rule 16(a)(1)(G) for the proposition that the summary must describe the witness's opinions, the basis and

_____

typographical error that Briggs made in his report; he had actually examined Exhibit 13A—the prints of the digital scale. Briggs explained that "[t]he number that I erroneously put into my report was the property slip number that was prepared by Identification Technician Anna Young from the [DNA] swabs that she took off of the items of evidence." He said that he "absolutely could not have reviewed those [DNA swabs] in [his] analysis" and confirmed that he actually "reviewed the latent fingerprints that [Young] recovered off of item 13A and item No. 23."

reasons for those opinions, and the witness's qualifications. Counsel maintained that he was never given such notice and that all he had was a laboratory report. He said that he had no information as to what Kilgore's opinion was, what his qualifications were, or what he was going to testify to. He insisted that all the government could point to was a one-paragraph report that was provided in discovery. Therefore, counsel requested that Kilgore's testimony be stricken in its entirety from the record, as it was offered without sufficient notice upon his request and in violation of Rule 16(a)(1)(G). He further contended that admission of the testimony prejudiced Buchanan's right to a fair trial and due process of law.

In response, the government noted that the two-page Kilgore report was in discovery. Buchanan's counsel did not dispute that. The government then stated that "this is the manner in which the U.S. Attorney's office discloses [its] summary of expert opinions . . . . [It] put[s] in the report provided." The government pointed out that, "under Iowa Code Section 691.2 there is a presumption of qualification of the expert, and that's contained on there." According to the government, it had "not received any specific inquiry on whether this expert's [sic] testified" and it "would . . . have made [Kilgore] available to answer any of those questions." The government then offered a stipulated discovery order, which Buchanan's counsel had signed, indicating that the discovery the government provided "contains . . . Rule 16 material." This order made it unnecessary for the government to "write a summary for [Buchanan] saying, 'Oh, by the way, this is what [the government is] providing under the rules.'" The district court denied the motion.

Federal Rule of Criminal Procedure 16(a)(1)(G) states that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." This written summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.* "If the government fails to comply, the district court may order the government to disclose the evidence, grant a continuance, prohibit use of the evidence at trial, or 'enter any other order that is just under the circumstances.'"

*United States v. Shepard*, 462 F.3d 847, 866 (8th Cir. 2006) (quoting Fed. R. Crim. P. 16(d)(2)).

"A defendant asserting reversible error under Rule 16(a)(1)(G) must demonstrate prejudice resulting from the district court's decision to admit the contested testimony." *United States v. Camacho*, 555 F.3d 695, 704 (8th Cir. 2009) (internal quotations and citation omitted). "A claim of prejudice based on untimely disclosure is less convincing when unaccompanied by an objection to the object of that disclosure." *United States v. Anderson*, 446 F.3d 870, 876 (8th Cir. 2006) (internal quotations and citation omitted).

In *Camacho*, the defendant argued that the district court erroneously permitted the government to introduce expert testimony from a chemist on substances seized from a hotel room; according to the defendant, "the government gave no notice of its intent to use an expert witness to testify to lab test conclusions under Federal Rule of Criminal Procedure 16(a)(1)(G)." 555 F.3d at 704. On appeal, we noted that the objection to the chemist's testimony originally came from a codefendant's counsel, "who conceded that the government had provided a proposed stipulation as to the expert's testimony and copies of lab results before the first trial some three months earlier." *Id*. We held that the defendant "neither demonstrated nor alleged prejudice, and concomitantly the district court did not abuse its discretion in admitting the chemist's expert testimony." *Id*.

Similarly, in *United States v. Kenyon*, the defendant claimed that testimony from an expert regarding sexual abuse victims was admitted in violation of Rule 16(a)(1)(G). 481 F.3d 1054, 1061 (8th Cir. 2007). The government had "notified [the defendant] that [the expert] would testify regarding the medical evidence in sexual abuse cases, and the emotional and physical characteristics of abused children." *Id*. But the government did not specifically notify the defendant that the expert "would testify that the extent of sexual abuse generally increases over time." *Id*. This court affirmed the district court's admission of the evidence, explaining that the defendant

did not object when [the expert] first offered this testimony or seek a continuance to react to ostensibly unexpected evidence. He has not argued that if had he received earlier notice of this evidence, then he would have been able to force its exclusion or to present a more effective defense. Thus, [the defendant] has not established prejudice, and the admission of the testimony was not reversible error.

*Id*. at 1062.

Here, as in *Camacho*, Buchanan acknowledges that the parties entered into a stipulated protective order governing discovery, stating that the discovery materials that the government provided contained the Rule 16 material. And, as in *Kenyon*, Buchanan's counsel did not move for a continuance or argue to the district court that if he had received earlier notice of such evidence, then he would have been able to move for its exclusion or present a more effective defense.

Therefore, we hold that the district court did not abuse its discretion in permitting Kilgore's testimony.

## C. *Sufficiency of the Evidence*

Buchanan's final argument is that the district court erred in denying his motion for judgment of acquittal because insufficient evidence exists to support his conviction. According to Buchanan, the government failed to prove that he had the intent and ability to exercise control over the contraband or the place where it was kept. Specifically, Buchanan claims that the government based its case on the drugs in the safe discovered at the 65th Street residence. According to Buchanan, while his name was listed on the lease to the residence, the government presented no evidence establishing that he had unrestricted access to the residence or even possessed a key to the residence. He again argues that the evidence pertaining to the key and the safe should not have been admitted. Additionally, he asserts that the government failed to establish that he knew of the presence of the drugs in the safe or even had any intention to exercise dominion and control over the drugs. He also claims that the head

case agent, Officer Chad Nicolino, was "less than forthright" in Buchanan's trial and in a prior case eight years earlier.

In response, the government argues that sufficient evidence supports the verdict, as set forth in the district court's order. The government also responds that Buchanan's attack on Officer Nicolino's credibility fails because credibility determinations are uniquely within the province of the jury.

> We review the denial of a motion for judgment of acquittal de novo, accepting all reasonable inferences drawn from the evidence that support the jury's verdict. The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt.

*United States v. Wise*, 588 F.3d 531, 538 (8th Cir. 2009) (internal quotations and citations omitted).

In the present case, Buchanan was charged with knowingly possessing both cocaine base and cocaine with the intent to distribute them. "The offense of possession with intent to distribute consists of two elements: knowing possession of [cocaine base or cocaine] and the intent to distribute it." *United States v. McClellon*, 578 F.3d 846, 854 (8th Cir. 2009) (internal quotations and citation omitted). Buchanan challenges the first element—whether he knowingly possessed the cocaine base or cocaine.

> As to the first element, "[p]ossession of contraband can be either actual or constructive." *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002). "[A]n individual has constructive possession of contraband if he has ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed." *Id.* (internal quotations and citation omitted). "'*[K]nowledge* of presence,' combined with '*control* over the thing is constructive possession.'" *Id.* (quoting *United States v. Lemon*, 239 F.3d 968, 971 (8th Cir. 2001) (emphasis added in *Cruz*)[)]. If knowledge of presence exists, then "control is established by proof the person has dominion over the

premises in which the contraband is concealed." *Id*. (internal quotations and citation omitted).

*Id*.

In denying Buchanan's motion for a new trial, the district court specifically found that sufficient evidence showed that Buchanan possessed the drugs found in the safe at the 65th Street residence, stating:

> Law enforcement conducted extensive surveillance of Buchanan, and observed him exiting the 65th Street residence on several occasions. In addition, the Government presented testimony that law enforcement found evidence of narcotics dealing on Buchanan's person. More significant, in this Court's view, was the evidence linking Buchanan to the safe where the narcotics were found. As discussed above, along with the narcotics and $18,000 in cash, the safe contained a vehicle title in Buchanan's name, a lease agreement for the 65th Street residence signed by Buchanan, and a digital scale with his fingerprints on it. The Government also presented evidence showing that the key found on Buchanan's person had the same numeric inscription as the safe and the instruction manual found inside.

Our independent review of the record confirms that the evidence cited by the district court sufficiently establishes that Buchanan constructively possessed the drugs. Taken in its totality, the above-cited evidence establishes that Buchanan exercised "dominion or control" over the contraband.

We also reject Buchanan's challenge to Officer Nicolino's credibility. Officer Nicolino testified concerning surveillance of Buchanan and the seizures of evidence from Buchanan, his vehicle, and the 65th Street residence. Buchanan attempts to undermine Officer Nicolino's credibility by pointing out that Officer Nicolino (1)

could not recall the presence of the drug dog at the traffic stop;[3] (2) testified, in contravention of his prior testimony in a preliminary hearing, that Buchanan made some statements about not being associated at all with the 65th Street residence; and (3) testified that he received a one-day suspension in 2000 for providing "inaccurate testimony" arising out of a situation where he issued a traffic citation to an individual for running a stop sign when it was ultimately determined that there was no stop sign at the intersection.[4]

As we have repeatedly held, "[a] jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony." *United States v. Hodge*, 594 F.3d 614, 619 (8th Cir. 2010) (citing *United States v. Cunningham*, 83 F.3d 218, 222 (8th Cir. 1996); *United States v. Anderson*, 78 F.3d 420, 423 (8th Cir. 1996) ("As trier of fact, the jury ha[s] the best opportunity to observe the witnesses' facial expressions, attitudes, tone of voice, reactions to questions, and other behavior.")).

Buchanan's challenge offers nothing that would make his case an exceptional circumstance warranting appellate reversal of the jury's credibility determination. The credibility matters he raises were best resolved by the trier of fact in the first instance. Inconsistencies revealed in Officer Nicolino's testimony may detract from his overall

---

[3]The dog-handling officer testified that he did not recall Officer Nicolino being at the scene at the time of the dog sniff.

[4]Officer Nicolino testified on direct examination concerning this disciplinary matter that had occurred over eight years earlier. He testified that he had received a one-day suspension in 2000 for providing "inaccurate testimony" arising out of a situation where he issued a traffic citation to an individual for running a stop sign when it was ultimately determined that there was no stop sign at the intersection. According to Officer Nicolino, he observed that there was no stop sign there when he went by the evening that he had testified in traffic court on the matter. He further said that he reported the observation to his supervisor, who informed the county attorney's office. He was cross-examined extensively and was recalled by the government, after additional material concerning the matter was obtained by the government.

credibility, as good cross-examination often does, but they do not make his testimony on the relevant issues essentially incredible such that no reasonable juror could have believed him. Therefore, we reject Buchanan's challenge to Officer Nicolino's credibility and hold that sufficient evidence supports the jury's verdict.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____