UNITED STATES of America, Appellee,

v.

Eric L. DUNLAP, Appellant.

UNITED STATES of America, Appellee,

v.

Cornelius B. COLEMAN, Appellant.

Nos. 93–3540, 93–3556.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1994.

Decided July 5, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 19, 1994 in
No. 93–3540.

Patrick W. Fitzgerald, Alton, IL, argued, for appellant.

Carter Collins Law, St. Louis, MO, argued (Edward L. Dowd, Jr. and Patricia A. McGarry on the brief), for appellee.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A jury found appellant Eric L. Dunlap guilty of possession with intent to distribute cocaine base and cocaine powder, and carrying a firearm while committing those offenses; the jury also found appellant Cornelius B. Coleman guilty of possession with intent to distribute cocaine base and cocaine powder, and carrying a firearm while committing those offenses. Dunlap asks us to reverse his convictions because, he argues, the affidavit supporting the application for the search warrant for his apartment contained misrepresentations, and because certain comments the government made in its opening statement and closing argument infringed his constitutional rights. Coleman raises three issues on appeal, the most important of which is that the evidence presented by the government was not sufficient to submit his case to the jury.

## I.

Two police officers, Detective Brian Vickers and Detective Joe Spiess, independently received information from different confidential informants that Dunlap was selling cocaine base from his apartment. The officers, working independently, began surveillance of the apartment and observed people visiting the apartment in a manner consistent with illegal transactions: in the course of an hour or two, many different people arrived separately, were greeted by Dunlap, and remained inside only a short time before leaving. When Vickers and Spiess learned that they were independently investigating the same subject they combined their resources. On December 18, 1992, Vickers prepared an affidavit to support a search warrant based on the information provided by one of their confidential informants and the results of both sets of surveillance. Neither of the confidential informants gave the officers information about Coleman; the officers did

not observe Coleman during their surveillance.

Spiess kept the apartment under surveillance while Vickers was applying for the search warrant. He observed Eunice Spark, Dunlap's girlfriend, leave in Dunlap's car. Spark returned approximately ten minutes later with Coleman; both entered the apartment. Very shortly thereafter Spark left the apartment alone. Soon after Spark left, Vickers arrived with the search warrant that he had obtained from the Circuit Court of St. Louis, Missouri.

Vickers and other officers proceeded to execute the warrant. The officers pried open the locked gate that secured the common entrance to the building, entered the building, and walked to the door to Dunlap's apartment. As Vickers arrived at the door, and before he could knock, Dunlap opened it from inside the apartment. There was no testimony that Dunlap was dressed to leave the building in the middle of December in St. Louis. Vickers entered the apartment and saw Coleman standing in the living room about eight feet behind Dunlap. The officers found a handgun in Coleman's pocket. After searching Dunlap, who also had a handgun, the officers searched the kitchen and found more than five hundred grams of cocaine powder, approximately thirty grams of cocaine base, and other items consistent with the distribution of cocaine and the refining of cocaine powder into cocaine base. At the time the officers entered the apartment, some cocaine powder was being refined into cocaine base; a batch of cocaine base had also only recently been produced. After he was arrested and before being taken away, Coleman asked the officers to retrieve his hat from the kitchen; they complied with the request. The officers also found three more guns in the bedroom as well as an additional two hundred grams of cocaine powder.

## II.

Dunlap had at first asked the trial court to suppress the evidence obtained during the execution of the search warrant because the facts contained in the affidavit in support of the warrant application were insufficient to establish probable cause. The trial court denied the motion to suppress, and Dunlap does not appeal from that determination. Dunlap now asserts, however, that the testimony at trial of Vickers and others revealed that Vickers' affidavit contained material misrepresentations and omissions.

■ An affidavit that contains false statements made deliberately or with reckless disregard for the truth cannot properly support a search warrant if those statements were necessary for the finding of probable cause made by the judge who issued the warrant. *United States v. Wold*, 979 F.2d 632, 633 (8th Cir.1992). Even if we assume that this issue is properly before us, it is clear that the relevant affidavit would have supported the search warrant even if the allegedly misleading statements were stricken from it: the information Vickers obtained from his confidential informant and the remaining details of his surveillance were sufficient to establish probable cause to issue the search warrant.

■ Dunlap's only other argument is that the prosecutor prejudiced the jury against Dunlap by claiming in her opening statement that certain evidence would be presented which was not in fact presented, by alluding in her closing argument to Dunlap's decision not to testify, and by inflaming the jury against Dunlap. None of these claims of prejudice has merit. Although the government did suggest that it would present evidence that during their surveillance police officers saw Dunlap meet visitors at his door and make exchanges with those visitors, the testimony of the officers made clear that the exchanges occurred inside Dunlap's apartment, out of the view of the officers. But the trial court and the prosecutor herself told the jury that statements made by the attorneys were not evidence, and we presume that these admonitions were sufficient to erase any prejudice that the statements might have generated. It is equally clear that the prosecutor did not refer to Dunlap's decision not to testify when she argued that there was no evidence to support the Dunlap's theory that he was merely a middle man: there was indeed no such evidence, and evidence of Dunlap's role could have been presented by

witnesses other than Dunlap. Finally, the government did not prejudicially inflame the jury by referring to the role that firearms sometimes play in drug trafficking.

### III.

■ Coleman argues that the evidence presented at trial is insufficient to support the jury's verdict. We can reverse only if we are convinced that a reasonable jury would have had to conclude that the government had failed to prove an essential element of the offense beyond a reasonable doubt. *United States v. Ivey,* 915 F.2d 380, 383 (8th Cir.1990). The government could have proved its case by proving that Coleman had actual or constructive possession of the cocaine seized in Dunlap's apartment or that he aided and abetted Dunlap's possession of the cocaine. There is no doubt, and the government does not argue, that the government did not prove actual possession. In its brief, the government relies exclusively on the theory that Coleman aided and abetted Dunlap; in its oral argument, however, the government also suggested that Coleman had constructive possession of the cocaine when Dunlap opened the door to the apartment.

■ The government presented evidence that Coleman was present in Dunlap's apartment. Mere presence is not sufficient to support a conviction for possession. *United States v. O'Connell,* 841 F.2d 1408, 1425 (8th Cir.1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). We believe that "constructive possession 'should not be lightly imputed to one found in another's apartment or home.'" *United States v. Johnson,* 952 F.2d 1407, 1411 (D.C.Cir.1992) (quoting *United States v. Holland,* 445 F.2d 701, 703 (D.C.Cir.1971)). When determining the sufficiency of the evidence to support a conviction for possession of contraband found in a place other than an appellant's own home, we have considered the closeness of the relationship between the appellant and the person whose actual possession is not disputed, the presence of valuable or important personal items belonging to the appellant, such as documents, in the same location as the drugs, and the degree to which the association between the appellant and the

actual possessor was related to criminal activity. *See United States v. Roberts,* 953 F.2d 351, 353 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 3008, 120 L.Ed.2d 882 (1992); *O'Connell,* 841 F.2d at 1425; *United States v. Wajda,* 810 F.2d 754, 762 (8th Cir.), *cert. denied,* 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). In order to prove that a defendant aided and abetted another's commission of an offense, the government must establish that the defendant was associated with the unlawful venture, participated in it as something the defendant wished to bring about, and sought by the defendant's own action to make it succeed. *United States v. Larson,* 760 F.2d 852, 857–58 (8th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985); *United States v. Duke,* 940 F.2d 1113, 1117 (8th Cir.1991).

■ The evidence in this case, namely Coleman's presence in the apartment with a gun, his hat in the kitchen, and the fact that he was brought to Dunlap's apartment at Dunlap's request, allows an inference that Coleman had constructive possession of the cocaine; the evidence could not allow, however, a reasonable jury to be convinced beyond a reasonable doubt that Coleman had constructive possession of the cocaine or that he aided and abetted Dunlap. The government stressed that Dunlap had, in his kitchen and bedroom, equipment and material consistent with refining and distributing cocaine, including cocaine, guns, scales, small plastic bags, and glass jars. But the presence of these items in Dunlap's apartment, without more, cannot support convicting Coleman for possession of contraband with intent to distribute it. Central to the government's argument is its claim that Dunlap was about to depart from his home, leaving Coleman alone with the contraband. We are not convinced that Dunlap's opening the door can support the conclusion that Coleman had, or was about to have, constructive possession of cocaine beyond a reasonable doubt. Dunlap's behavior is equally consistent with opening his door to investigate noise outside his home that he might well have heard. Nor can the evidence support the conclusion that Coleman, beyond a reasonable doubt, was associated with the venture, participated in it, and

sought to make it succeed. Coleman's behavior was equally consistent with an intent to purchase cocaine for his own use, an offense not charged in the indictment. On this evidence, the jury could only speculate that Coleman was guilty of the charges against him: the evidence showed at most that he was probably guilty; it could not have established that he was guilty beyond a reasonable doubt. The case against Coleman should not have been submitted to the jury.

Having found the evidence insufficient to support Coleman's conviction, we need not address his other arguments.

#### IV.

For the reasons given, Dunlap's conviction is affirmed, and Coleman's is reversed. This case is remanded to the District Court with instructions to enter a judgment of acquittal in Coleman's case.