# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1735

_____

United States of America,

        Appellee,

v.

Barela Cruz,

        Appellant,

_____

No. 01-1737

_____

United States of America,

        Appellee,

v.

Rufino Gonzales,

        Appellant.

*
*
*
*
*
*
*
*
*
*
*
*

Appeals from the United States
District Court for the
Southern District of Iowa.

_____

Submitted: November 13, 2001

Filed: April 3, 2002

_____

Before LOKEN, HEANEY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

A jury convicted Barela Cruz (Cruz) and Rufino Gonzales (Gonzales) of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A) & (B) and 846 and of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A). A jury also convicted Cruz of possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). The district court sentenced Cruz and Gonzales each to 151-month concurrent sentences on the drug charges and sentenced Cruz to an additional 60-month consecutive sentence on the firearms charge.

The defendants appeal their convictions and sentences, challenging the sufficiency of evidence, the admission of "drug notes" evidence, an allegedly improper jury instruction, and the drug quantity attributed to them at sentencing. Because the record does not contain sufficient evidence to support the defendants' convictions, we reverse.[1]

I.    BACKGROUND

On June 28, 2000, officers assigned to the Des Moines Strategic Anti-Felony Team (SAFT) arrested Jose Antonio Diaz-Cesena (Cesena) on drug charges. Following his arrest, Cesena agreed to cooperate with police. The next morning police established a surveillance operation at the La Cruz Mexican Market (Mexican market), and Officer Jeffrey Morton directed Cesena to call a specific telephone number. Once Cesena placed the call, Officer Morton notified the surveillance team

_____

[1]In light of our ruling that there is insufficient evidence to support the defendants' convictions, we need not reach the other issues raised in this appeal.

that the call had been placed. Based on communications received from the surveillance team, Officer Morton directed Cesena to make a second and a third call to the same number.

After communicating with Officer Morton, SAFT officers surveilling the Mexican market observed a silver Volkswagen Jetta occupied by two men arrive at the market. Officers next observed the driver using a cell phone in front of the store. Minutes later the driver entered the vehicle and departed. SAFT officers followed the vehicle to 1475 Dewolf Street where the driver pulled behind a house and parked the vehicle inside a roofless, rectangular structure made of plywood. The men exited the vehicle and covered it with an inexpensive piece of plywood such that the vehicle was not observable from the street.

The two men entered the house. Approximately ten minutes later, the men exited the house, returned to the vehicle, and drove away. SAFT Officers followed the vehicle and stopped it a short distance from the house. Officers identified Rufino Gonzales as the driver and Barela Cruz as the passenger. Officers searched the defendants and the vehicle but found no contraband. A Uniden cellular phone was found inside the vehicle. When a SAFT officer dialed the telephone number Cesena had dialed earlier, the cellular phone rang.

SAFT officers arrested both men. Cruz was transported to the Polk County jail where he was booked under the name Cruz Barela at 1921 21 Street, Des Moines, Iowa. Police transported Gonzales to the residence at 1475 Dewolf Street. Upon arriving at the house, officers removed a key ring from Gonzales's pocket. A key on the ring unlocked the front door. Officers entered the house, secured the premises, and locked the house. Officer Morton testified Gonzales told him he stayed at the Dewolf residence but also told him he did not stay at the residence. A SAFT officer applied for a state search warrant.

Once officers obtained a search warrant, they searched the residence. In the basement, officers seized two one-pound bags of methamphetamine concealed in the ceiling, a digital scale, two blender motors and one blender pitcher, and an array of packaging materials. On the main level, officers seized packaging materials from the kitchen, a notepad with names, amounts, and phone numbers from the living room along with two cellular phones and a charger. In the northwest bedroom, officers seized $1,200 in U.S. currency from inside a suitcase.

Officers also searched a north middle bedroom. The closet contained both men's and women's apparel. Officers seized two ounces of methamphetamine in the pocket of man's shirt hanging inside the closet, two grams of methamphetamine in the pocket of another shirt, $1,300 in U.S. currency located underneath the carpet in the closet, and a nine millimeter pistol with two loaded magazines and a flash suppressor located underneath clothing on the floor of the closet.

In the same closet, SAFT officers found a shoe box containing a black and white photocopy of an expired California driver's license and an expired Mexican photo identification card. The shoe box contained numerous other documents, including a bail bond receipt for Cruz Cruz-Varela at 1931 Washington; a Polk County jail check payable to Cruz Cruz-Varela; a handwritten receipt for a motor vehicle transfer to a purchaser named Cruz Varela Juvenal; and a water works receipt addressed to Cruz Gubenal at 1475 Dewolf. Officer Namanny testified at trial that 1931 Washington was not a valid address in Des Moines.

The shoe box also contained documents bearing the name Reynaldo Ramirez (Ramirez), a named codefendant,[2] including a lease to the Dewolf Street residence with Ramirez as lessee, rental payment receipts, a title to the silver Jetta driven by

---

[2]The government identifies the co-defendant as both "Reynaldo Ramirez" and "Reynaldo Ramirez-Molina" in court documents.

Gonzales, a title to a blue truck parked in the rear of the residence, a Western Union receipt, a wireless service receipt and agreement, and correspondence from U.S. West. Inside the shoe box were documents addressed to unknown persons, including a medical billing statement addressed to Antonia Martinez at 1475 Dewolf Street.

The United States indicted Cruz and Gonzales on three of five counts charged in a second superceding indictment. Count I indicted Cruz, Gonzales and seven other individuals of conspiring to distribute more than 500 grams of a mixture containing methamphetamine and marijuana; Count II indicted Cruz, Gonzales and four other individuals on possession with intent to distribute more than 500 grams of a mixture containing methamphetamine; and Count IV indicted Cruz and Gonzales on possession of a firearm in furtherance of a drug trafficking crime. Against the government's objection, the district court granted the defendants' motion to sever, and Cruz and Gonzales were tried separately from their co-defendants.

The government's case in chief lasted less than a day and consisted exclusively of law enforcement testimony. At the close of the government's case, both defendants moved for judgment of acquittal. The district court acknowledged the government's case was "thin," and the court reserved ruling on the motions. A jury returned guilty verdicts against both defendants on the drug charges and found Cruz guilty of the firearm charge, but acquitted Gonzales of the same charge. Following trial, the district court denied Cruz's motion for judgment of acquittal, determining that the evidence was sufficient to support the jury's verdict. Cruz filed a timely appeal, and Gonzales joined his appeal.

## II.    DISCUSSION
### A.    Standard of Review
We review the sufficiency of the evidence to sustain a conviction de novo. United States v. Campa-Fabela, 210 F.3d 837, 839 (8th Cir. 2000). "'In reviewing the sufficiency of the evidence to support a guilty verdict, we look at the evidence

in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict.'" Id. (quoting United States v. Plenty Arrows, 946 F.2d 62, 64 (8th Cir. 1991)).

We will uphold a jury verdict if substantial evidence supports it. United States v. Schubel, 912 F.2d 952, 955 (8th Cir. 1990). Substantial evidence exists if a reasonable minded jury could have found the defendant guilty beyond a reasonable doubt. Id. This standard of review is a strict one; we will not lightly overturn the jury's verdict. United States v. Boyd, 180 F.3d 967, 978 (8th Cir. 1999). "Reversal is appropriate only where a reasonable jury could not have found all the elements of the offense beyond a reasonable doubt." United States v. Armstrong, 253 F.3d 335, 336 (8th Cir. 2001).

### B. Sufficiency of Evidence
### 1. Constructive possession of contraband.

Cruz and Gonzales challenge the sufficiency of the evidence establishing that they knowingly possessed methamphetamine with intent to distribute. In order to establish a violation of 21 U.S.C. § 841(a)(1), the government had to prove beyond a reasonable doubt that Cruz and Gonzales knowingly possessed and intended to distribute the methamphetamine found inside the house. United States v. Sanchez, 252 F.3d 968, 972 (8th Cir. 2001). "[T]he possession need not be exclusive, but may be joint." Ortega v. United States, 270 F.3d 540, 545 (8th Cir. 2001) (citations omitted).

Possession of contraband can be either actual or constructive. United States v. Moore, 212 F.3d 441, 445 (8th Cir. 2000). We have held that an individual has constructive possession of contraband if he has "ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed." United States v. McCracken, 110 F.3d 535, 541 (8th Cir. 1997) (quoting Schubel, 912 F.2d at 955).

-6-

"[M]ere physical proximity to contraband is insufficient to convict a person of possession with intent to distribute." United States v. Lemon, 239 F.3d 968, 970 (8th Cir. 2001).  However, "knowledge of presence," combined with "control over the thing is constructive possession." Id. (quoting United States v. Johnson, 18 F.3d 641, 647 (8th Cir. 1994) (emphasis in original)).  "If there is knowledge, control is established by proof the person has 'dominion over the premises in which the contraband is concealed.'" Id. (quoting United States v. Brett, 872 F.2d 1365, 1369 (8th Cir. 1989)).  We have also noted "it takes more evidence of knowledge and control to prove that a defendant constructively possessed contraband found in someone else's apartment, as opposed to his own residence." Id.

To resolve the sufficiency challenge, we must examine the government's evidence that Gonzales and Cruz had constructive possession over the residence located at 1475 Dewolf Street.  Trial testimony established the SAFT team had no knowledge of prior drug-related activity by the defendants before their arrest, and officers discovered no contraband in plain view.  The evidence further established that Reynaldo Ramirez,[3] an indicted co-defendant, possessed title to the vehicle driven by Gonzales and leased the house at 1475 Dewolf Street, not Gonzales or Cruz.

The government sought to prove that Gonzales exercised dominion over the residence by establishing he had access to the house, he had entered the house, and he had admitted to police that he stayed at the house.  This proof, however, was subject to several factual qualifications.  After police stopped the Jetta and transported Gonzales back to the house, officers found Gonzales in possession of a key ring containing three keys.  Police identified one key as an ignition key to the Jetta owned by Ramirez, a second key was identified as a front door key to the house

_____

[3] After the defendants' trial, the government tried Ramirez under the name of Reynaldo Ramirez-Molina, and a jury acquitted him of all counts.

-7-

leased by Ramirez, and a third key was never identified. Surveillance officers had not observed Gonzales use the key to enter the house. Officers had only observed Gonzales and Cruz approach the house and exit approximately ten minutes later. No evidence established Gonzales's or Cruz's motive for entering the house or their activity inside the house.

The admission evidence was adduced on cross examination, when Officer Morton was asked whether Gonzales had said "he lived" at the house. Officer Morton responded that Gonzales had said "he stayed there." When asked why officers had applied for a search warrant, Officer Morton responded that a warrant was obtained to ensure the search would be legal, adding that Gonzales had said "he stayed there, and then he said he didn't stay there." The government did not develop the admission against interest on redirect examination. Officer Morton had spoken Spanish with Gonzales and was translating that conversation at trial. Thus, a jury could only speculate as to when and under what circumstances Gonzales may have "stayed" at the house, and when and why he recanted his statement.

The four SAFT officers who searched the house found no forensic or physical evidence suggesting that Gonzales lived at the house or that he intended to return.

Reviewing the evidence in the light most favorable to the verdict, and accepting all reasonable inferences supporting the verdict, we must conclude a reasonable jury could not find, beyond a reasonable doubt, Gonzales had dominion and control over the premises in which the contraband was concealed or Gonzales had knowledge of the concealed contraband. In reaching this conclusion, we have reviewed prior drug cases in this circuit challenging the sufficiency of the evidence for constructive possession. In each case where we have affirmed a jury verdict, the government has presented more evidence, consisting of eyewitness testimony coupled with forensic or physical evidence, establishing the defendant's control and dominion over the contraband or the premises. See, e.g., Boyd, 180 F.3d at 979-80

(testimony of girlfriend who leased the house that the bedroom was the defendant's and evidence of defendant's clothes and identification in the bedroom where drugs were found); McCracken, 110 F.3d at 541 (testimony of defendant and his daughter that defendant lived at the residence and evidence of personal items with defendant's nickname on them were recovered from rooms where drugs were discovered); United States v. Perkins, 94 F.3d 429, 436-37 (8th Cir. 1996) (testimony of ex-girlfriend was corroborated by incriminating physical evidence found inside apartment which was listed as defendant's address in the local telephone book); and United States v. Holm, 836 F.2d 1119, 1121-25 (8th Cir. 1988) (testimony of drug dealer and defendant's own admissions at trial of ownership of personal effects, including Holm's passport, which were discovered in a bedroom of the house where drugs were seized).

Comparing the evidence of constructive possession presented in these cases to evidence presented in this case, we conclude the government's case against Gonzales for possession with intent to distribute is exceptionally thin. The government presented no evidence that Gonzales actually knew of or exercised control over the concealed contraband discovered inside the house. No forensic evidence established his dominion and control over the contraband or the house. The search produced no personal effects or venue items belonging to Gonzales. No co-defendant, informant, or other fact witness, such as the landlord or a neighbor, testified that Gonzales had knowledge and control over the concealed contraband or that he resided at the house.

The government's evidence showed the house was leased to a co-defendant named Reynaldo Ramirez. As such, we will not lightly impute constructive possession of drugs or other contraband to one found in another's house. United States v. Dunlap, 28 F.3d 823, 826 (8th Cir. 1994). Certainly, Gonzales's access to and presence inside the house were circumstantial evidence from which the jury could infer he had constructive possession of contraband. Id. However, evidence

of mere access and presence, without more, could not allow a reasonable jury to find beyond a reasonable doubt that Gonzales had constructive possession of the methamphetamine. Id. Furthermore, no evidence was offered to show Gonzales had any knowledge of the hidden contraband and no evidence exists from which such knowledge can be reasonably inferred. As in Dunlap, "the jury could only speculate that [Gonzales] was guilty of the charges against him: the evidence showed at most that he was probably guilty; it could not have established that he was guilty beyond a reasonable doubt." Id. at 827.

With respect to Cruz, the government advanced a theory that Cruz used multiple aliases and that documents found inside a shoe box in a bedroom identified Cruz and established his residency at 1475 Dewolf Street. In support of this theory, Officer Namanny testified individuals involved in the drug trade frequently use aliases, nicknames, and other peoples' identities to avoid detection by law enforcement. Officer Namanny identified multiple documents bearing the names "Juvenal Cruz Varela," "Cruz Cruz-Varela," "Cruz Varela Juvenal," and "Cruz Gubenal." Namanny also testified that a street address of 1931 Washington recorded on the bond receipt for "Cruz Cruz-Varela" did not exist in Des Moines.

To bolster the alias theory, the government contended that a black and white photocopy of an expired photo identification card issued in Mexico to a "Juvenal Cruz Varela" depicted Cruz. At trial, government counsel asked Officer Namanny if the photograph on the Mexican ID card "appeared to be one of the defendants in this case, Barela Cruz." Officer Namanny responded, "Yes, it does." Cruz's attorney did not object to the identification.[4]

---

[4]An identification witness's testimony must be "rationally based on the perception of the witness," Fed. R. Evid. 701(a); United States v. Wright, 904 F.2d 403, 405 (8th Cir. 1990), and is admissible "if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." United States v. Farnsworth, 729 F.2d 1158, 1160 (8th Cir. 1984). Rule

We conclude the government failed to prove its alias theory beyond a reasonable doubt. No evidence was adduced to support an inference Cruz had attempted to conceal his true identity. See, e.g., United States v. Wint, 974 F.2d 961, 967 (8th Cir. 1992). The government presented no evidence establishing that Cruz had ever used any of the names Officer Namanny identified from seized documents. Police recovered no false identification on Cruz. The government failed to establish with sufficient evidence for a guilty verdict that Cruz did, in fact, reside at 1475 Dewolf Street.

Cruz also challenges the sufficiency of evidence presented to prove his firearm charge in Count IV. 18 U.S.C. § 924 (c) prohibits, inter alia, the possession of a firearm in furtherance of a drug trafficking crime. Because we conclude the government presented insufficient evidence of constructive possession to sustain

701 is satisfied if "the witness is familiar with the defendant's appearance around the time the . . . photograph was taken and the defendant's appearance has changed prior to trial." Id. Due to the constraints placed on cross-examination, we have discouraged the use of lay opinion identification by police officers to identify defendants. Id. at 1161.

The government did not establish that Officer Namanny was sufficiently familiar with Cruz to offer opinion testimony. The testimony at trial reflects that Officer Namanny had no knowledge of or prior dealings with Cruz before his arrest. Therefore, he could not have been familiar with Cruz when the photograph on the Mexican identification card was taken. Officer Namanny was not more likely to identify Cruz correctly from the photograph than was the jury.

Even assuming Officer Namanny made a reliable identification of Cruz from the old black and white photocopy, such evidence standing alone would be insufficient to raise an inference that Cruz exercised control over the residence. The photocopy was discovered near a bond receipt for an individual bearing the name Cruz-Varela. Viewed in this context, the inference raised is that the documents belonged to Ramirez who leased the residence and who posted bond for a Cruz-Varela.

-11-

Cruz's conviction under Count II, his conviction under Count IV must also be reversed.

### 2.    Conspiracy to distribute.

To convict a defendant of conspiracy to distribute methamphetamine, the government must prove beyond a reasonable doubt (1) the existence of an agreement to achieve some illegal purpose; (2) the defendant's knowledge of the agreement; and (3) the defendant's knowing participation in the conspiracy.  United States v. Mora-Higuera, 269 F.3d 905, 910 (8th Cir. 2001) (citation omitted).  "A conspiracy may be inferred from circumstantial evidence." United States v. Grimaldo, 214 F.3d 967, 975 (8th Cir. 2000).

The government argued that Gonzales and Cruz, together with Cesena and Ramirez, conspired to distribute methamphetamine.[5]  The government contends the circumstantial evidence, when viewed cumulatively, supports the jury's finding a conspiracy existed.

Cesena ceased cooperating with police and did not testify at trial.  The district court granted a motion in limine excluding testimony about the contents of telephone calls initiated by Cesena on June 28-29, 2000.  The evidence adduced at trial was that officers observed Gonzales talking on a cellular phone at the Mexican market shortly after being notified that Cesena had initiated a phone call.  The evidence also established that when an officer dialed the telephone number Cesena had dialed earlier, the cellular phone found in the Ramirez vehicle being used by Cruz and Gonzales rang.

---

[5]Count I (conspiracy to distribute methamphetamine) and the second superceding indictment charged nine persons, two of whom were Gonzales and Cruz. The government offered some testimony at trial that seven persons, other than Gonzales and Cruz, were arrested as part of the investigation.  In closing arguments, the government only mentioned Gonzales, Cruz, Cesena and Ramirez.

A jury could reasonably infer from the timing that Gonzales spoke to Cesena. However, without evidence of the contents of their telephone conversation, a jury could only speculate as to what was discussed. Similarly, a jury could infer from their use of Ramirez's vehicle and entry into the house Ramirez leased that Gonzales and Cruz knew Ramirez. However, without evidence establishing why Gonzales and Cruz used the car and why the defendants drove to the house, and what transpired once they were inside the house, a jury could only speculate as to what occurred that day.

None of the inferences reasonably drawn from the evidence establish the defendants knew of or participated in a conspiracy to distribute methamphetamine. Evidence of association or acquaintance with a known drug dealer and mere presence at the location of the crime alone, even when coupled with knowledge of crime, are not sufficient to establish guilt on a conspiracy charge. United States v. Jensen, 141 F.3d 830, 834 (8th Cir. 1998). Therefore, we conclude the record does not reflect sufficient evidence to support a jury verdict that Gonzales and Cruz conspired to distribute methamphetamine.

## III.   CONCLUSION

For the reasons stated above, we reverse the convictions of Cruz and of Gonzales. We remand the cases to the district court for entry of judgments in accordance with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-