# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2826
_____

United States of America

*Plaintiff - Appellee*

v.

Patrelle Jose Green-Bowman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: September 25, 2015
Filed: March 2, 2016

_____

Before RILEY, Chief Judge, BRIGHT and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

A jury found Patrelle Green-Bowman guilty of possessing a firearm as a felon and possessing a firearm not registered to him. The district court[1] entered judgment

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

on the verdict and sentenced Green-Bowman to concurrent terms of 78 months in prison. Green-Bowman appeals his convictions and sentence. We affirm.

## I.  BACKGROUND

Late in the evening of August 2, 2013, two Waterloo, Iowa police officers on foot patrol saw a pair of cars with their hoods up in an apartment-building parking lot. Suspecting car trouble, the officers walked over to see if anyone needed assistance. They found Green-Bowman sitting in the back seat of one of the cars with the door open and facing out with his feet on the ground. He was talking on a cell phone. When one of the officers greeted him, Green-Bowman got out of the car, shut the door, and walked to the corner of the parking lot, still on the phone. The other people standing around the front of the car said they did not need any help, so the officer prepared to leave. As the officer walked back around the car, he shined his flashlight in the window and saw a shotgun stock on the back seat, next to where Green-Bowman had been sitting. The shotgun was partly wrapped in a red, white, and blue Chicago Cubs jacket. Green-Bowman was wearing a red, white, and blue Chicago Cubs stocking hat. The officer "started to put two and two together." He alerted his partner, who went over and handcuffed Green-Bowman.

A grand jury indicted Green-Bowman, charging him with two crimes based on possessing the shotgun: possession of a firearm and ammunition as a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and possession of a firearm not registered to him, in violation of 26 U.S.C. § 5861(d). Green-Bowman pled not guilty and went to trial. The only question for the jury was whether he knowingly possessed the shotgun and the shells inside it; he stipulated to the other elements of each crime.

At trial, the government called Clay Gilmer, who had driven the car in which Green-Bowman was sitting. Gilmer was standing nearby when the officers arrived and testified he could not remember much. Gilmer previously had testified in some detail before the grand jury. Gilmer said he did not recall what he said to the grand

jury. The government showed Gilmer a transcript of his testimony and then asked him about his grand-jury testimony. When he still denied recalling what he said to the grand jury, the government read his answers. He denied remembering those specifically. The jury ultimately found Green-Bowman guilty of both counts, but the district court vacated the verdict and ordered a new trial, on the ground that Gilmer's grand-jury testimony was unfairly prejudicial.

Anticipating the issue might come up again at the second trial, the district court ruled that if the government called Gilmer and he still claimed not to remember testifying to the grand jury about Green-Bowman, the government could not introduce his grand-jury testimony, either to impeach his credibility or as substantive evidence. The government called Gilmer again anyway. Gilmer answered a series of general questions and testified about other people who were in the car and the parking lot. The government then broached the issue of his grand-jury testimony by asking if he remembered testifying about Green-Bowman having a nickname. Gilmer said he did not remember. Green-Bowman preemptively objected to the government pursuing the questioning any further. After a sidebar discussion, the district court allowed the government to show Gilmer the grand-jury transcript and ask if it refreshed his memory. When Gilmer said he still did not remember if Green-Bowman had a nickname, the government moved on to other issues and did not bring up the grand-jury testimony again.

The government also introduced evidence about an incident in August 2011 that resulted in Green-Bowman being convicted in Iowa state court for carrying a weapon. See Iowa Code § 724.4(1). According to the evidence presented at trial, Waterloo police officers responded to a report of gunshots and came upon Green-Bowman carrying a backpack. When he spotted the officers, Green-Bowman ducked in the back door of a nearby bar. The officers drove around to the front, saw Green-Bowman coming out, and told him to stop. Instead, he ran back into the bar, still carrying the backpack. One of the officers followed him and found him calmly

walking through a group of patrons at the bar, backpack-less. The backpack was in a booth near the front door. There was a handgun inside. Green-Bowman first denied knowing about the gun, referring only to a BB gun. Then he changed his story and said someone came up to him on the street and gave him the gun. When the police did not believe that story either, Green-Bowman admitted the gun belonged to his friend, who had shot at a group of people who were threatening him and Green-Bowman shortly before the police arrived. The friend stuck the gun in Green-Bowman's backpack as they ran away.

Green-Bowman opposed admission of the 2011 incident evidence. The district court allowed the evidence but first gave a limiting instruction. The district court repeated a similar instruction at the end of the trial.

The second jury, like the first, found Green-Bowman guilty of both counts.[2] Green-Bowman filed a motion for judgment of acquittal or a new trial, which the district court denied. The district court then calculated Green-Bowman's advisory sentencing range under the United States Sentencing Guidelines (U.S.S.G. or Guidelines). The district court determined Green-Bowman had an offense level of 22 and a criminal history category of III but, at the government's request, departed upward to category IV. The district court then imposed a sentence at the top of the post-departure range—78 months—on each count, to run concurrently.

Green-Bowman appeals, arguing (1) the evidence about the incident with the handgun was inadmissible and the government improperly used it to tell the jury he had a criminal propensity to possess guns, (2) the evidence he possessed the shotgun was insufficient, (3) the government committed prosecutorial misconduct by asking

---

[2]With respect to the felon-in-possession count, the second jury found Green-Bowman knowingly possessed the shotgun but did not find he knowingly possessed the ammunition inside. The first jury was not asked to indicate the basis for its verdict.

Gilmer questions it knew he would not answer, and (4) the upward departure was an abuse of discretion. We have jurisdiction under 28 U.S.C. § 1291.

## II.     DISCUSSION
### A.     The Handgun Incident
#### 1.     Admissibility

Green-Bowman first argues the district court should not have let the jury hear about the events leading to his 2011 firearm conviction. We review the district court's decision to admit evidence for abuse of discretion. See, e.g., United States v. Halk, 634 F.3d 482, 487 (8th Cir. 2011).

Evidence of past bad acts may be admissible to prove, among other things, someone knew something or intended a certain result, but not to prove someone has a bad character or a propensity to act a certain way. See Fed. R. Evid. 404(b). And like other evidence, it must be relevant and may be excluded if it is unfairly prejudicial. See Fed. R. Evid. 402, 403. From these rules and related case law, we have derived a four-part test: "Evidence is admissible under Rule 404(b) if it is: (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than in prejudicial effect." United States v. Strong, 415 F.3d 902, 905 (8th Cir. 2005). Green-Bowman focuses on the overlap between the second and fourth factors, contending that because the incident with the handgun was not similar to the facts of this case, the evidence had minimal probative value, which was outweighed by unfair prejudice.[3]

---

[3]Though we ultimately reject Green-Bowman's challenge, we reiterate the need for "careful analysis" of how evidence of past bad acts is relevant to a particular issue at trial and whether it is unfairly prejudicial, see United States v. Turner, 781 F.3d 374, 391 (8th Cir. 2015). As we have recently emphasized, the government "[s]imply asserting—without explanation—that [a past] conviction is relevant to a material issue such as intent or knowledge is not enough to establish its admissibility." Id. at 390

Green-Bowman identifies several differences between what he did in 2011 and what he was charged with in this case: in 2011 he had a handgun, not a shotgun; he had just received the gun from someone else; he first tried to flee the police; and he actually carried the gun, so the prosecution did not depend on a theory of constructive possession. All true, but not significant enough and not complete. Past bad acts "need not be duplicates" of the charged crime for evidence of them to be admissible under Rule 404(b). United States v. Burkett, 821 F.2d 1306, 1309 (8th Cir. 1987). They need only be "sufficiently similar," and in such a way, to support whatever permissible inference makes the evidence relevant.[4] Id.; cf. United States v. Cook, 454 F.3d 938, 941 (8th Cir. 2006) (upholding the exclusion of evidence of past convictions for crimes that superficially resembled the charged offense but were "*functionally* dissimilar").

The evidence about the 2011 handgun incident was relevant to prove Green-Bowman knew about the shotgun next to him in the car and intended to possess it. See United States v. Walker, 470 F.3d 1271, 1274-75 (8th Cir. 2006); Strong, 415 F.3d at 905-06; cf. United States v. Cassell, 292 F.3d 788, 794-95 (D.C. Cir. 2002) ("A prior history of intentionally possessing guns . . . is certainly relevant to the determination of whether a person in proximity to such a [gun] on the occasion under litigation knew what he was possessing and intended to do so. If [the defendant] had been standing in an apartment close to a gun and never possessed one before, a jury might find it less likely that his proximity evidenced knowing and intentional possession."). Though Green-Bowman did not specifically deny knowing about the shotgun, the government still needed to prove knowledge because Green-Bowman's

(warning against "passive treatment of the Federal Rules of Evidence").

[4]Green-Bowman asserts the handgun incident is not automatically similar enough for admission under Rule 404(b) just because it also concerned possession of a gun. We need not consider that broad proposition, because, as explained hereafter, gun possession was in fact not the sole relevant similarity here.

-6-

general not-guilty plea put every element of the charged offenses at issue. See Walker, 470 F.3d at 1274. Further, without any direct evidence of Green-Bowman actually holding the shotgun, the government presented the jury with a theory of constructive possession, and knowledge is often a key element of constructive possession. See United States v. Johnson, 18 F.3d 641, 647 (8th Cir. 1994). So proving possession itself also depended, in part, on proving Green-Bowman knew the shotgun was in the car.

This evidence also helped prove Green-Bowman knew about the shotgun because it made an innocent explanation for his behavior less likely. See Fed. R. Evid. 401(a). Consider what happened in the parking lot: Green-Bowman was sitting in a car, talking on the phone. A police officer initiated a conversation with him. Without responding, Green-Bowman got up and walked away. Standing alone, a natural interpretation of that reaction might be that his walking away from the police had nothing to do with the shotgun in the car, he just did not want to interrupt his call. The evidence about the 2011 handgun incident, however, showed that on another recent occasion, when Green-Bowman had a gun he was not supposed to possess and was approached by the police with no way to get away, he did something similar—he distanced himself from the gun while acting like he was unaware of it. Knowing that historical context, a jury might see Green-Bowman's behavior in the parking lot differently. Maybe he walked away not so he could talk in peace, but so the police would not find him next to the shotgun in the car.

The differences Green-Bowman emphasizes, by contrast, go to details—the type of gun, where it came from, what Green-Bowman was doing with the weapon, what happened before and after the interaction in which the police found it—that play no significant role in the rationale making the evidence relevant. Those differences do not make the evidence inadmissible. Neither do they undermine its probative value. The handgun incident was similar enough to the facts of this case for the

evidence to be relevant to Green-Bowman's mental state, a material element the government needed to prove. See Burkett, 821 F.2d at 1309.

As for the other side of the scale under Rule 403, Green-Bowman does not identify what unfair prejudice allegedly outweighed the probative value of the evidence. Presumably, the prejudice was the risk of the jury improperly reasoning that possessing a gun before showed Green-Bowman had a bad character and therefore was more likely to have a gun again. But the district court twice instructed the jury it was not allowed to draw such an inference,[5] and "the presence of a limiting instruction diminishes the danger of any unfair prejudice from the admission of other acts," United States v. Franklin, 250 F.3d 653, 659 (8th Cir. 2001).

We "normally defer" to the district court's judgment in balancing between the probative value of evidence and the risk it poses of unfair prejudice. Id. We see no reason to overturn its conclusion here.

### 2. Closing Argument

Green-Bowman also challenges how the government used the evidence of the 2011 handgun incident in its closing argument, which he claims improperly suggested he possessed the shotgun because of his criminal propensities. Because he raised his

---

[5]The district court's first instruction was:

> Remember, even if you find that the defendant may have committed a similar act in the past, this is not evidence that he committed such an act in this case. You may not convict a person simply because you believe he may have committed similar acts in the past. The defendant is on trial only for the crimes charged, and you may consider the evidence of prior acts only on the issue of intent, knowledge, and . . . absence of mistake or accident.

The second was virtually identical.

challenge in timely objections at trial, he is entitled to relief if the government acted improperly and "deprive[d] him of a fair trial." United States v. Thomas, 664 F.3d 217, 224 (8th Cir. 2011). The district court, for its part, overruled his objections and denied his motion for a new trial. We afford trial courts "broad discretion in controlling closing arguments" and reverse "only on a showing of abuse of discretion." United States v. Eldridge, 984 F.2d 943, 946 (8th Cir. 1993).

Green-Bowman does not identify any specific instances of the government telling the jury he was guilty because he had a bad character or criminal propensities. Instead, he reasons the government implicitly invited that inference by reciting the facts of the handgun incident at length and repeatedly even though, he claims, it had at most minimal probative value. We disagree.

At the outset, we note, in addition to the district court's two limiting instructions, the government expressly told the jury to "consider th[e] evidence as to the knowledge, the intent, and the absence of mistake or fact [sic] as the judge instructed you" and explained the permissible inference it hoped the jury would draw from it. As discussed above, the 2011 incident evidence went to prove Green-Bowman knew about the shotgun in the car. The government needed to prove knowledge both because of Green-Bowman's general not-guilty plea and because it was a key element in proving Green-Bowman constructively possessed the shotgun. The logic by which the evidence about the 2011 handgun incident was relevant to Green-Bowman's knowledge depended in part on certain specific facts about what happened. That is, this was not a trial where the relevant past-bad-act evidence was simply the bare fact of a conviction, in which case there might be little to be gained (permissibly) from reminding the jury what the defendant did to earn the conviction. Cf. United States v. Burk, 912 F.2d 225, 229 (8th Cir. 1990). To the contrary, here the government had good reason to take the time to compare the details of the two incidents thoroughly to highlight the similarities supporting an analogy and inference about what was going through Green-Bowman's head, notwithstanding the dissent's

suggestion the government's comparison took too long.[6]  Cf. United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995) (concluding unfair prejudice did not outweigh probative value of admitting details of a defendant's prior crime).

In sum, the government did not expressly argue Green-Bowman was guilty because he was the sort of person who would be likely to have a gun, and we decline to view its description of the 2011 handgun incident as an attempt to do so surreptitiously.  The district court was within its broad discretion to allow the government's closing argument.

## B.      Sufficiency of the Evidence

The next question presented is whether the evidence was sufficient to prove Green-Bowman possessed the shotgun.  We review the sufficiency of the evidence de novo.  See, e.g., United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002).  The evidence was sufficient if a reasonable jury could have found Green-Bowman guilty beyond a reasonable doubt.  See id.  We view the evidence in the light most favorable to the guilty verdict and draw all reasonable inferences supporting the verdict.  See id.

Green-Bowman's argument focuses on the several other people who had recently been in the car and were still nearby when the police found the shotgun.  He

_____

[6]The dissent also sees impropriety in the government arguing, as the dissent puts it, "Green-Bowman's actions proved he committed the instant offense because Green-Bowman acted similarly in the past."  Post at 18.  But an argument does not go to propensity simply because the argument compares someone's actions at two different times.  It is precisely the similarity between Green-Bowman's actions that meant evidence concerning what happened in 2011 supported an inference about what he knew—that is, why he acted the way he did—in 2013 and thus was, as the dissent agrees, admissible.  Armed with the court's jury instruction, defense counsel likewise may take time to explain thoroughly to the jury how such evidence does not show propensity and should not be considered as such.

asserts no reasonable jury could have found him guilty without additional "affirmative proof" he, rather than someone else, possessed the shotgun.

Green-Bowman is mistaken. The government did not need to prove other people did not possess the shotgun. As we have repeatedly explained, and as the district court instructed the jury, "more than one person may possess a thing." Johnson, 18 F.3d at 647; accord, e.g., United States v. Maxwell, 363 F.3d 815, 818 (8th Cir. 2004). And that remains true even though the government focused on Green-Bowman and did not tell the jury a story about someone else possessing the gun along with him. Cf. Johnson, 18 F.3d at 648. Without evidence someone else had exclusive control over the shotgun, the presence of other people who might have possessed the weapon does not prove Green-Bowman did not *also* possess it or otherwise undermine the evidence of possession. See id. at 648 n.14 ("That the evidence would permit a conclusion that [the defendant's] control over [an item] was not exclusive, i.e., he shared it with [someone else], is immaterial. . . . [C]onstructive possession can be joint.").

The evidence was sufficient for a reasonable jury to find Green-Bowman possessed the shotgun. Constructive possession can be established by the combination of knowing about something and having control over it. Id. at 647. Green-Bowman does not challenge the sufficiency of the evidence he knew the shotgun was next to him in the car. As to control, the question is whether the evidence showed "some nexus" between Green-Bowman and the shotgun; just sitting close to it, by itself, probably would not be enough. Id. The nexus in this case includes, most importantly, the shotgun being partially wrapped in what Green-Bowman admits was his jacket, with the shotgun's stock exposed. Cf. id. at 648 (upholding a finding that a defendant possessed a gun that was protruding from a bag of his clothes on the seat behind him in a car). A reasonable factfinder could infer from that fact, combined with the position of the shotgun, that Green-Bowman not only was aware of the shotgun, but

had control over it, and thus constructively possessed it.  The evidence was sufficient to support the verdict.

### C.    Examining Gilmer

Green-Bowman claims the government committed misconduct while examining Gilmer at the second trial.  Green-Bowman maintains the government subverted the rules generally excluding hearsay evidence, see Fed. R. Evid. 802, by calling Gilmer and asking him questions it did not expect him to answer.[7]  His apparent concern is the government could have asked Gilmer if he saw Green-Bowman with the shotgun and, if Gilmer again said no, as everyone expected he would, could have impeached Gilmer with his grand-jury testimony.  That would have risked the jury impermissibly treating Gilmer's out-of-court statements as substantive evidence of Green-Bowman's guilt, just as in the first trial.  See United States v. Demery, 674 F.3d 776, 780 (8th Cir. 2011).

Regardless of whether the government's conduct would have been improper had things played out the way Green-Bowman feared, but see United States v. Logan, 121 F.3d 1172, 1175 (8th Cir. 1997) ("[T]he government's motive in eliciting testimony is irrelevant."), his fears never actually materialized.  The government did not impeach Gilmer with his grand-jury testimony, so the jury never heard anything it was not supposed to hear.  Because the government used an innocuous question to test Gilmer's willingness to repeat his grand-jury testimony, the jury could not infer anything from the exchange other than Gilmer might have previously mentioned Green-Bowman having a nickname.  That did not make the government's conduct improper or unfairly prejudicial.

---

[7]Green-Bowman disclaims the argument, suggested in his initial brief, that calling Gilmer to testify again was itself improper, so we do not address it.

We are also unpersuaded by Green-Bowman's suggestion of impropriety stemming from the possibility that Gilmer's recalcitrance might "sully the jury's impression of" Green-Bowman. Nor does Green-Bowman's assertion that the government waited until after the second trial to indict Gilmer for perjury change our conclusion. That the alleged delay in punishing Gilmer might have emboldened him not to cooperate at the second trial is irrelevant, because the government was not allowed to use his noncooperation as an opportunity to let the jury hear his potentially prejudicial grand-jury testimony. We find no support for Green-Bowman's suggestion that a discretionary charging decision in a separate case could be misconduct simply because Green-Bowman otherwise might have been able to impeach Gilmer with a pending perjury charge.[8]

## D. Upward Departure

Finally, Green-Bowman challenges his sentence. The district court increased his criminal history category by one level under U.S.S.G. § 4A1.3(a)(1), which permits an upward departure "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Because Green-Bowman objected to the upward departure, we review for abuse of discretion. See, e.g., United States v. White Twin, 682 F.3d 773, 775 (8th Cir. 2012).

The district court gave two main reasons for concluding the Guidelines calculations understated the seriousness of Green-Bowman's criminal history. First, several of his convictions were unscored despite, in the district court's evaluation,

---

[8]Because we resolve the issue of Gilmer's perjury indictment without resort to the court filings and proceedings Green-Bowman provided in his addendum and referred to in his brief—and, anyway, we could take judicial notice of such materials if they were directly related—we deny the government's motion to strike. See Zerger & Mauer LLP v. City of Greenwood, 751 F.3d 928, 935 n.7 (8th Cir. 2014).

involving serious misconduct. Green-Bowman protests that the lack of criminal history points for those convictions was offset by the points he received for other convictions, including what he characterizes as minor shoplifting offenses. Yet he did not dispute the scores for those offenses. Nor does he explain how they would otherwise overstate the seriousness of his criminal history.

Second, the scores for several of Green-Bowman's convictions were based on reduced sentences imposed after an Iowa court "reconsidered" his original sentences. Green-Bowman proposes the district court should have ignored the longer original sentences because the reconsidered sentences best reflected the sentencing court's judgment about the appropriate sentence. The district court could consider "the historical facts of" Green-Bowman's criminal behavior, not just the sentences eventually imposed and served, United States v. Senior, 935 F.2d 149, 151 (8th Cir. 1991), and it is not implausible that the original sentences shed additional light on the severity of his conduct. The district court's overall assessment of the seriousness of Green-Bowman's criminal history was reasonable.

The district court also found the Guidelines understated the likelihood Green-Bowman would commit other crimes, based on his "nonstop criminal history for about a three-year period" and failure to respond to correctional supervision in the past. See U.S.S.G. § 4A1.3(a)(1). As we have often recognized, "[a] defendant's recidivism is a reasonable basis for applying an upward departure." United States v. Gonzalez, 573 F.3d 600, 606 (8th Cir. 2009).

The district court's decision to depart upward was based on a reasonable consideration of appropriate factors. It was not an abuse of discretion.

-14-

## III. CONCLUSION

The evidence was admissible and sufficient to support Green-Bowman's conviction, the government did not commit misconduct at trial, and the sentence was not an abuse of discretion. We affirm.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent from the majority's conclusion that the district court did not abuse its discretion in denying Patrelle Jose Green-Bowman's (Green-Bowman) motion for a new trial on the basis of prosecutorial misconduct. In my reading of the record, the prosecutor used Green-Bowman's 2011 firearm conviction to improperly infer Green-Bowman had a propensity to commit the instant offense. The prosecutor's use was not only improper, but highly prejudicial. Thus, I would grant a new trial to Green-Bowman.

We review the denial of a motion for a new trial on the basis of prosecutorial misconduct for abuse of discretion. United States v. Barrera, 628 F.3d 1004, 1007 (8th Cir. 2011). " '[P]rosecutorial misconduct during closing argument may be grounds for reversal," but the district court has "broad discretion in controlling closing arguments.' " United States v. Ziesman, 409 F.3d 941, 954 (8th Cir. 2005) (quoting United States v. Beckman, 222 F.3d 512, 526 (8th Cir. 2000)). To obtain a reversal for prosecutorial misconduct, Green-Bowman must show that (1) the prosecutor's remarks were improper, and (2) the prosecutor's remarks prejudiced Green-Bowman's rights in obtaining a fair trial. United States v. Robinson, 439 F.3d 777, 780 (8th Cir. 2006). If the prosecutor's comments were improper, we examine prejudice by considering "(1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) any curative actions taken by the trial court." United States v. Crawford, 523 F.3d 858, 861 (8th Cir. 2008) (quoting United States v. Yu, 484 F.3d 979, 986 (8th Cir. 2007)).

-15-

Here, the district court ruled the 2011 firearm conviction admissible under Rule 404(b). The district court reasoned the 2011 firearm conviction was relevant to show "knowledge" of the presence of the firearm. Although the district court properly admitted the 2011 firearm conviction for that purpose, the prosecutor's subsequent misuse of the 2011 firearm conviction during closing argument warrants reversal.

The "[a]dmission of Rule 404(b) evidence . . . does not grant the government free rein to use that evidence however it wishes." United States v. Richards, 719 F.3d 746, 763-64 (7th Cir. 2013). Improperly using Rule 404(b) evidence includes " 'arguing to a jury [at closing arguments] that it should convict a defendant based on the defendant's propensity to commit a crime.' " Id. at 764 (quoting United States v. Simpson, 479 F.3d 492, 503 (7th Cir. 2007)); see also United States v. Brown, 327 F.3d 867, 870-72 (9th Cir. 2003) (reversing for improper use of Rule 404(b) evidence during closing argument). An improper propensity argument need not be blatant and includes "placing [a] propensity inference at the center of [a prosecutor's] closing argument." Richards, 719 F.3d at 765 (emphasis added); see also United States v. Himelwright, 42 F.3d 777, 786 (3d Cir. 1994) (noting prejudice can occur when a prosecutor places a "disproportionate emphasis" on Rule 404(b) evidence during closing argument).

In this case, the prosecutor improperly used Green-Bowman's 2011 firearm conviction during closing argument to infer that Green-Bowman had a propensity to commit the instant offense. The prosecutor did so in several ways. First, the prosecutor spent approximately 21% of closing argument[9] discussing the 2011 firearm conviction. See Himelwright, 42 F.3d at 786 (discussing the potential prejudice caused by "disproportionate emphasis"). Second, the prosecutor spent a significant amount of time paralleling the offenses, asking the jury to draw the improper

---

[9]Measured by number of lines in the Government's Closing Argument Transcript, DCD 130 (hereinafter, "Gov't Closing Arg."), excluding objections and statements made outside the presence of the jury.

-16-

inference that Green-Bowman committed the instant offense because he had committed similar illegal conduct in the past.[10]

---

[10]Below are a few examples of the prosecutor's "paralleling":
- Running from police:
  - Instant offense: "He's sitting in the car, and the officers walk up . . . . And what's [Green-Bowman] do? He walks away." (Gov't Closing Arg. 10).
  - Prior conviction: "[T]he defendant had a gun in a backpack . . . and he knew it. He saw the police. And what did he do? He ran." (Id. at 11-12).
- Actions when possessing a gun:
  - Instant offense: "He's sitting in the car, and the officers walk up . . . And what's he do? He walks away. Not one word. He walks away. He's distancing himself from the items that are illegal in the car that he knows he's not supposed to be in possession of." (Id. at 10).
  - Prior offense: "And then remember the testimony that was read about Officer Zubak, what he saw of the defendant acting when the defendant knew he was in possession of a firearm. What did he see when the defendant – or when he got into that bar, the Bosnian bar? He sees the defendant calmly trying to mingle with a group of 50- to 60-year-old Bosnian men. Remember also what the defendant had just done, as he was attempting this mingling activity." (Id. at 13).
- Lying to police:
  - Instant offense: "When the officer asked him in the interview about why he was right next to the gun, he lies and says he wasn't next to the gun. He's distancing himself from the gun, just through words." (Id. at 11).
  - Prior conviction: "He attempted to distance himself from the gun, and, then, when asked about it in the interview, he told a lie." (Id. at 15).

-17-

Lastly, the prosecutor failed to limit his use of the 2011 firearm conviction for the purpose proffered when the evidence was admitted.  See Richards, 719 F.3d at 764.[11]  As discussed above, the district court admitted Green-Bowman's prior firearm conviction under Rule 404(b) to show "knowledge of the presence of the firearm." See United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006) (emphasis added). But at closing arguments, the prosecutor did not use the conviction solely for this proffered purpose, stating in particular:

> Recall that the defendant had this conviction prior to August 2nd of 2013.  It shows what he knows, what happens:  When I have a gun, when I run, and when I eventually admit that I had the gun, I get convicted of carrying a weapon.  So what did he do here?  He walks away.  He lies about even being in the car, an obvious lie.  He walks away nonchalantly.  The defendant knew – based on the context of what he had done previously and what happened the time previously, it shows what he knew on that day and why he acted the way he did.  This isn't an accident.

(Gov't Closing Arg. 16 (emphasis added)).  The government went well beyond using the conviction to show "knowledge of the presence of the firearm" and, instead, used the prior conviction as evidence Green-Bowman's actions proved he committed the instant offense because Green-Bowman acted similarly in the past. (See also id. at 14 (prosecutor admitting to the district court that he was using defendant's prior

---

[11]The majority opines it was proper for the prosecutor to "take the time to compare the details of the two incidents thoroughly to highlight the similarities supporting an analogy and inference about what was going through Green-Bowman's head." (Maj. Op. 9).  In my view, the prosecutor went beyond simply highlighting the similarities between the cases.  Instead, the prosecutor used the prior conviction to show Green-Bowman "acted" in a certain way in the past and, thus, based on his conduct in this case must have committed the instant offense.  See Richards, 719 F.3d at 765 (noting the inference drawn from placing Rule 404(b) evidence "at the center of [the prosecutor's] closing argument" was that the defendant was a drug dealer in California "so he must have dealt" in the instant offense).

conviction because Green-Bowman's "behavior on the prior occasion demonstrate[d] the knowledge that [Green-Bowman] had on this occasion, why he acted the way he did, why he answered the questions the way he did, why he walked away")).

Because the prosecutor improperly used Green-Bowman's prior conviction to show propensity, Green-Bowman must show prejudice. Robinson, 439 F.3d at 780. Of particular note, while sufficient to sustain the conviction, the government's properly admitted evidence was weak.[12] See United States v. Splain, 545 F.2d 1131, 1135 (8th Cir. 1976) ("[I]f the evidence of guilt is weak or tenuous, the existence of prejudice is more easily assumed."); see also United States v. Holmes, 413 F.3d 770, 776-77 (8th Cir. 2005) (holding, in part, that a defendant should be granted a new trial because "the government's case was less than overwhelming"). Further, while the district court did provide a limiting instruction as part of the jury instructions,[13] the district court did not sustain Green-Bowman's repeated objections to the government's use of the 2011 firearm conviction, or provide a curative instruction during the government's closing argument. See United States v. Conrad, 320 F.3d 851, 856-57 (8th Cir. 2003) ("We do not believe the standard . . . instructions have a

---

[12]As alluded to by the majority, the government only presented one piece of evidence to show "some nexus" between Green-Bowman and the firearm other than Green-Bowman sitting in the back of the vehicle, facing out, with his feet on the ground—Green-Bowman's jacket partially wrapped around the firearm. (Maj. Op. 11-12).

[13]The district court advised the jury:

Remember, even if you find that the defendant may have committed a similar act in the past, this is not evidence that he committed such an act in this case. You may not convict a person simply because you believe he may have committed similar acts in the past. The defendant is on trial only for the crimes charged, and you may consider the evidence of prior acts only on the issues of intent, knowledge, and absence of mistake or accident.

significant curative effect on the statements made by the prosecutor."); <u>Brown</u>, 327 F.3d at 871-72 (holding the district court's curative instructions both during and after closing argument were ineffective because the instruction <u>during closing argument</u> "did not tell the jury to reject the prosecutor's implication that [the defendant] harbored a propensity to cheat his business associates"). Therefore, in my view, there exists sufficient evidence of prejudice to warrant reversal.

For the reasons stated above, I would vacate Green-Bowman's conviction and remand this matter for a new trial.

_____